UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re                        :          CHAPTER 11

                                :          (Subchapter V)

BUCKINGHAM TOWER CONDOMINIUM, INC. :

f/k/a BUCKINGHAM OWNERS, INC.,       :

                                :          CASE NO.: 22-22403-shl

                                :

                Debtor.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## INTERIM ORDER AUTHORIZING USE OF CASH
## COLLATERAL BY DEBTOR PURSUANT TO 11 U.S.C. SECTION 363

**UPON** the motion dated July 28, 2022 (the "Motion") of Buckingham Tower Condominium, Inc. f/k/a Buckingham Owners, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor") which seeks authority to, *inter alia,* use cash collateral in which Titan Capital ID, LLC ("Titan") has asserted a fully perfected first priority security interest pursuant to 11 U.S.C. Sections 363(c)(2) and 361 and Federal Rules of Bankruptcy Procedure 4001; and an interim hearing having been held on August 10, 2022 (the "Interim Hearing"), and upon the record taken at the Interim Hearing, and all of the pleadings heretofore filed in this proceeding, it is hereby found and determined as follows:

1.       This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §1334 and this is a "core" proceeding pursuant to 28 U.S.C. §157. Venue is proper in this Court pursuant to 28 U.S.C. §1408.

2.       On or about June 30, 2022, (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code") and elected to be treated as a debtor under Sub Chapter V and has continued in possession of its property and the management of its business pursuant to 11 U.S.C. §§1107 and 1108.

3.       As of the date hereof, the United States Trustee has not appointed an Official

Creditors' Committee as provided for in Section 1102 of the Code. No trustee or examiner has been heretofore appointed in this proceeding. On July 1, 2022, pursuant to 11 U.S.C. §1183(a), the United States Trustee appointed Heidi J. Sorvino as the Sub-Chapter V trustee (the "Sub V Trustee").

4. The Debtor is the owner of twenty-five (25) condominium units, the vast bulk of which of which are occupied by individual shareholders of the Debtor and their families, pursuant to proprietary leases which were in place prior to the conversion of the property from a cooperative to a condominium.

5. Subject to the Debtor's investigation and confirmation, on a preliminary basis, the Debtor acknowledges, on behalf of itself and not its estate:

a. The Debtor received advances from Titan;

b. Titan holds a note, mortgage, assignment of leases and rents and a foreclosure judgment lien (collectively, the "Loan Documents") against the Debtor's property, real and personal, which includes cash, rents and receivables.(the "Cash Collateral", together with the Debtor's real and personal property, the "Collateral").

c. The Cash Collateral is essential to the continued preservation and maximization of the Debtor's estate.

d. Continued use of the Cash Collateral on an interim basis pending a final hearing is necessary to prevent immediate and irreparable harm to the Debtor's estate in that without authorization to use the Cash Collateral, the Debtor's ability to meet its current necessary and integral business obligations will be impossible.

e. The value of Debtor's estate will be maximized by the continuation of Debtor, as a going business, and the use of the Cash Collateral is essential to such operations;

and

    f.    Good cause has been shown for entry of this Interim Cash Collateral Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). In particular, the authorization granted under the terms of this Interim Cash Collateral Order for the Debtor to continue using Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor and its estate. Entry of this Cash Collateral Order is in the best interest of the Debtor, its estate and creditors.

**BASED UPON THE FOREGOING,** it is hereby ORDERED as follows:

6.    The Motion is granted to the extent set forth herein. The Debtor is authorized to use Cash Collateral only in accordance with the terms of this Interim Order and the Budget attached hereto as <u>Exhibit A</u>.

7.    In accordance with the Budget, the Debtor shall make adequate protection payments ("Adequate Protection Payment(s)") to Titan for July 2022 and August 2022 in the amount of $12,000.00 per month or $24,000.00 in the aggregate on or before August 31, 2022. The Debtor shall make continued Adequate Protection Payments to Titan on or before the 15th of each successive month thereafter (ie September 15, 2022, October 15, 2022). Titan's acceptance of the Adequate Protection Payments shall not be deemed a waiver or modification of any of its rights under the Loan Documents.

8.    In accordance with the Budget, no later than ten (10) days following entry of this Order, the Debtor shall make payment to the City of Yonkers representing payment in full of all real property taxes, late fees and interest that have accrued post-petition. Proof of such payment shall be provided to Titan's counsel within three (3) business days of such payment.

9.    Notwithstanding section 522 of the Bankruptcy Code to the contrary, in addition to

the existing rights and interests of Titan in the Collateral and for the purpose of adequately protecting it from any diminution of value therein, Titan is hereby granted, as of the Petition Date: (a) valid, enforceable, unavoidable, and fully perfected replacement liens ("Replacement Liens") upon all existing and after-acquired tangible and intangible personal and real property and assets of the Debtor of any kind or nature, whether existing prior to or acquired after the Petition Date and wherever located, and all products and proceeds of all of the foregoing (collectively, the "Replacement Collateral"), only to the extent that said prepetition liens are deemed valid, perfected and enforceable as of the Petition Date, in the continuing order of priority, nature, extent and validity of said pre-petition liens and claims as existed on the Petition Date, and (b) a super-priority administrative expense claim under sections 503(b) and 507(b) of the Bankruptcy Code, subject only to: (i) the fees of the Sub Chapter V Trustee, counsel for the Debtor, the Debtor's accountant and any other professionals authorized to act on behalf of the Debtor in an amount not to exceed $25,000, as approved by the Bankruptcy Court; and (ii) the fees and commissions of a Chapter 7 trustee, in the event that this chapter 11 case is converted to one under chapter 7 not to exceed $10,000.

10. The security interests and liens herein granted and regranted: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of Titan on the Petition Date; (ii) shall secure the payment of indebtedness to Titan in an amount equal to the aggregate Cash Collateral used or consumed by the Debtor and any diminution in the value of the Collateral; and (iii) shall be deemed to be automatically perfected without the necessity of any further action by Titan or the Debtor.

11. The Replacement Liens shall immediately upon entry of this Interim Cash Collateral Order attach and become valid, fully perfected, enforceable, unavoidable and effective

by operation of law as of the Petition Date without any further action by the Debtor, Titan and the Court, and without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, mortgages, leasehold mortgages, or other documents or the taking of any other actions. Notwithstanding, if Titan hereafter requests that the Debtor execute and deliver financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by any of them to be reasonably necessary or desirable to further evidence the perfection of the Replacement Liens, the Debtor is authorized and directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents.

12.    The authorization granted herein for the Debtor's use of Cash Collateral is without prejudice to any and all rights and defenses of the Debtor and other parties in interest to challenge the validity, extent, priority or nature of any security interest of document relating thereto on or before ninety (90) days following entry of this Interim Cash Collateral Order (the "Challenge Deadline"), all of which rights and defenses are expressly preserved. The foregoing notwithstanding, in no event under any circumstance shall the Debtor or any estate professional acting on its behalf, be permitted, during the term of this Order, to use Titan's Collateral to: (i) object to or contest in any manner, or raise any defenses to the validity, perfection, priority or enforceability of the Loan Documents or Titan's right to payment thereunder, or the liens in favor of Titan securing the underlying indebtedness; (ii) assert any claims or causes of action against Titan of any type including without limitation any avoidance actions under chapter 5 of the Bankruptcy Code, or any claim or cause of action related to the Loan Documents or otherwise except related to a breach under this Order or a violation of the automatic stay.

13.    The term "Event of Default" shall mean the Debtor's (i) use of Cash Collateral

outside the Budget, (ii) failure to pay, timely and in full, the Adequate Protection Payments, real property taxes or any insurance premiums, and (iii) failure to comply with any of the dates and deadlines contained in this Order. Upon the occurrence of an Event of Default, Titan shall provide five (5) business days' written notice to the Debtor, its bankruptcy counsel, counsel to any official committee of unsecured creditors or, if no committee has been appointed, to the Debtor's 20 largest unsecured creditors, and counsel to the United States Trustee, of such Event of Default and the basis therefor, ***during which time the Debtor may cure such event of default or seek expedited relief from the Court as to whether an Event of Default has occurred, which hearing shall be scheduled at the earliest possible convenience of the Court***.

14.     Unless extended further with the written consent of Titan, the authorization granted to the Debtor to use Cash Collateral under this Order shall terminate immediately upon the earliest to occur of the following (the date of such termination being the "Termination Date"): (i) the entry of an order dismissing the Bankruptcy Case; (ii) the entry of an order converting the Bankruptcy Case to a case under chapter 7; (iii) the entry of an order appointing a chapter 11 trustee; (iv) the Debtor's failure to cure an Event of Default within five (5) business days' of written notice ***or to seek expediated relief from the Court as to whether an Event of Default has occurred, which hearing shall be scheduled at the earliest possible convenience of the Court***; (v) entry of an order reversing, vacating, or otherwise amending, supplementing or modifying this Order; or (vi) entry of an order granting relief from the automatic stay to any creditor (other than Titan) holding or asserting a lien in or against the Collateral. Notwithstanding any such termination, the rights and obligations of the Debtor and the rights, claims, liens, priorities, and other benefits and protections afforded to Titan under this Order shall remain unimpaired and unaffected by any such termination and shall survive any such termination.

15.     The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court, or otherwise by written consent of Titan.  If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity and enforceability of any lien, priority or benefit with respect to any indebtedness of the Debtor to Titan.

16.     The Bankruptcy Court shall retain jurisdiction with respect to all matters pertaining to this Order.

17.     Except as otherwise expressly set forth herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) Titan's rights to seek any other or supplemental relief in respect of the Debtor including the right to seek additional adequate protection at the Final Hearing; (b) any of the rights of Titan under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of Titan to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the case, conversion of the case to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in the case; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of Titan.

18.     Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof. To the extent that any findings of fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and to the extent that any conclusions of law are determined to be

findings of fact, such conclusions of law shall be adopted as such.

19.     A further interim hearing on the Motion is scheduled for September 7, 2022 at 11:00 a.m. (prevailing Eastern time) before this Court.  Within five (5) business days after entry of this Interim Order, the Debtor shall serve, or cause to be served, by first class mail or electronic mail, a copy of the Motion (to the extent the Motion was not previously served on a party) and this Interim Order on (i) the parties requesting notice, (ii) the Sub Chapter V Trustee; and (iii) counsel for Titan.

Dated:  White Plains, New York
        August 19, 2022


*/s/ Sean H. Lane*
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

Buckingham Tower Condominium, Inc.
Ch. 11 Case No.: 22-22403

Receipts

| | |
|---|---|
| Maintenance | $30,894.00 |
| Total Receipts | $30,894.00 |
| | |
| Condo Maintenance | $11,763.00 |
| Titan | $12,000.00 |
| Real Property taxes | $3,671.88 |
| Management | $1,000.00 |
| Reserve | $2,459.12 |
| Total: | $30,894.00 |