# PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** ("Agreement") is made the -----day of ----- 2022 (the "Effective Date") by and between _____ ("Seller"), and 615 Warburton 3 LLC, a New York limited liability company ("Purchaser").

In consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Seller and Purchaser, intending to be legally bound, hereby agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1. "Closing Date" shall mean the Ninetieth (90th) day from the Effective Date except that if said day is not a business day, then the Closing Date shall be the next business day thereafter.

"Purchase Price" shall mean the purchase price Purchaser shall pay to Seller for the Property (defined in Section 2.1 below), which shall equal One Million, eight hundred, seventy two, six hundred and forty Dollars ($1,872.640.00)

Section 1.2. ). with an additional Five Thousand ($5,000.00) Dollars for each vacant unit paid to the Unit Holder upon vacancy as turn in key money.

## ARTICLE II
## PURCHASE AND SALE; CLOSING

Section 2.1. Purchase and Sale. In consideration of the payment of the Purchase Price by Purchaser to Seller and for other good and valuable consideration, Seller hereby agrees to sell to Purchaser, and Purchaser hereby agrees to purchase from Seller, all of the following (collectively, the "Property"), subject to and in accordance with the terms and conditions of this Agreement:

(a) "Real Property" shall mean that certain parcel of land located at 615 Warburton Ave, Yonkers New York as more particularly described on **Exhibit A** hereto, consisting of 85 legal condominium apartments as evidenced by the survey and Certificate of Occupancy together with all easements, rights of way, privileges, licenses and appurtenances which Seller may now own or hereafter acquire with respect thereto; Purchaser is buying

(i) 2H Jason Phillips  -  $253,650.00

(ii) 3C Dawn Maron  -  $137,750.00

(iii) 3E Noreen Scott  -  $146,110.00

(iv) 4E Larry Watson  -  $146,110.00

1

      (v)      4L Hubert Huie  -  $215,080.00

      (vi)     6D Federal National, M.A. -  $157,130.00

      (vii)    6H Dorothy Taylor-Jones  -  $214,700.00

      (viii)   6J Vance Granby  -             $184,300.00

      (ix)     3B Vincent Ciccarello -       $203,110.00

      (x)      5H Jean Wilkinson  -           $214,700.00

TOTAL -                                                  $1,872,640.00

Full unit list in **Exhibit B.**

(b) "Improvements" shall mean all buildings, fixtures, structures and improvements situated on, affixed, trade names, branding, pictures, advertisements, IP or appurtenant to the Real Property; and

Section 2.2.  Closing.  The purchase and sale of the Property shall be consummated at a closing (the "Closing") to be held at the offices of Purchaser's title company, or via mail at 10:00 a.m., local time, on the Closing Date, or in another mutually agreeable manner and location.

Section 2.3.  Purchase Price.  Purchaser shall pay the Purchase Price as follows:

(a) Ten Thousand and No/100 Dollars ($20,000.00) (the "Deposit") by wire transfer or check payable to Riverside Abstract ("Title Company"), which Purchaser shall deliver to Title Company on even date hereof.

(b) The balance of the Purchase Price shall be paid by Purchaser to (or at the direction of) Seller at the Closing by wire transfer of immediately available funds (or, at the election of Seller, by Title Company check), subject to adjustment as provided in this Agreement.

ARTICLE III
PURCHASER'S DUE DILIGENCE

Section 3.1.  Title Matters.

(a) Title to the Real Property shall be good and marketable and free and clear of all liens, claims and encumbrances, excepting only the rights of parties in possession under and subject solely to the terms of the Leases and the following permitted encumbrances (collectively, the "Permitted Encumbrances" and each a "Permitted Encumbrance"): (i) liens for taxes, assessments and governmental charges not yet due and payable or due and payable but not yet delinquent, subject to adjustment as required by this Agreement; (ii) applicable zoning regulations and ordinances provided the same do not prohibit or impair use of the Property as currently operated and constructed or as contemplated by this Agreement; and (iii) such other encumbrances

of record as of the Effective Date in the applicable recording office with respect to such Property which are not objected to by Purchaser as Defects in accordance with this Agreement.

(b) Promptly after the Effective Date, Purchaser shall order from Title Company and direct Title Company promptly to deliver to Purchaser and Seller a preliminary title commitment, for an owner's policy of title insurance with respect to the Property, together with complete and legible copies of all instruments and documents referred to as exceptions to title (the "Title Commitment").

ARTICLE IV
CONDITIONS TO PURCHASER'S OBLIGATION TO CLOSE

The obligation of Purchaser to acquire the Property on the Closing Date shall be subject to the satisfaction of each of the following conditions precedent on and as of such Closing Date:

Section 4.1. Closing Documents. The Seller shall have delivered to Purchaser (or Title Company, as applicable) the following:

(a) A special warranty deed for the Real Property and the Improvements thereon, in proper statutory form for recording, duly executed and acknowledged by Seller, free from all liens and encumbrances other than the Permitted Encumbrances;

(b) The Unit is being conveyed as a Condominium Unit free and clear of all Co-Op liens, dues and unpaid common area charges

(c) A Non-foreign Person Certification in the form as required under Section 1445 of the Internal Revenue Code;

(d) A Payoff for Sellers pro-rata share of the Titan Capital Loan

(e) All keys and combinations to locks at the Improvements to the extent in Seller's possession or control;

(f) A resolution, certificate or other commercially reasonable documentation executed by the general partner of Seller evidencing the authority of Seller to convey the Property and the capacity of the signatory for Seller.

(g) Seller Shall continuously provide all reasonably requested information for Purchasers Lender up until the date of Closing

(h) The representations of Seller set forth in this Agreement shall be true and correct as of the date of this Agreement and shall be true and correct as of the date of Closing in all material respects except as otherwise specified.

(i) Unit must be delivered vacant or with a signed lease between the Unit holder and Purchaser, sample lease provided in Exhibit C, not to exceed three months of term at the rent provided for in Exhibit B

Section 4.2. Actions Affecting Property. Between the date of this Agreement and the Closing, Seller shall not allow or permit the imposition of any liens, judgments or other encumbrances which affect title to the Property in any manner, which are not removed as of the Closing Date, without the prior written approval of Purchaser (not to be unreasonably withheld). Seller, in accordance with its normal practices and procedures, will continue to maintain and to make all ordinary and non-structural repairs and replacements to the Property so as to keep the Property in substantially its present condition, reasonable wear and tear excepted and Seller shall operate and manage the Property in the same manner as it has operated under its current budget.

Section 4.3. Representations and Warranties. Each of the Seller's representations and warranties contained in this Agreement shall be true and correct in all material respects on the date of this Agreement (or, Seller shall take such actions to make any such representations true and correct in all material respects as of the Closing Date) and on the Closing Date.

Section 4.4. No Termination. Purchaser shall not have validly terminated this Agreement in accordance with the terms hereof.

Section 4.5 Titan Loan. The Seller shall receive a payoff from Titan Capital for its pro-rata share of the current loan on the Co-Op association.

If any of the conditions set forth herein are not fulfilled or otherwise waived by Purchaser, then Purchaser shall not have the obligation to complete closing hereunder and the Deposit shall promptly be returned to Purchaser, and the parties shall have no further liability hereunder.

ARTICLE V
CONDITIONS TO SELLER'S OBLIGATION TO CLOSE

The obligation of Seller to convey the Property on the Closing Date to Purchaser is subject to the satisfaction of the following conditions precedent on and as of such Closing Date:

Section 5.1. Purchase Price. The Purchaser shall deliver to Seller the Purchase Price payable hereunder, adjusted as herein provided.

Section 5.2. Closing Documents. The Purchaser shall have delivered to Seller (or Title Company, as applicable) duly executed and acknowledged counterparts of the documents described in Section 4.1 above, as applicable, together with such other conveyance documents, certificates, affidavits and other instruments as Seller or Title Company may reasonably require and as are customary in like transactions in the greater New York Metropolitan area.

Section 5.3. Accuracy of Representations. All of the representations and warranties of Purchaser contained in this Agreement shall have been true and correct in all material respects when made, and shall be true and correct in all material respects on the date of Closing with the same effect as if made on and as of such date.

ARTICLE VI
REPRESENTATIONS AND WARRANTIES OF SELLER

To induce Purchaser to enter into this Agreement and to complete the sale and purchase of the Property hereunder, Seller represents and warrants to Purchaser as follows as of the Effective Date and as of Closing:

Section 6.1. <u>Status and Authority of Seller</u>. Seller is a limited liability company duly organized, validly existing and subsisting under the laws of its state of formation, and has all requisite power and authority under the laws of such state to enter into and perform its obligations under this Agreement and to consummate the transactions contemplated hereby.

Section 6.2. <u>Action of Seller</u>. Seller has (or by the Closing Date will have) taken all necessary action to authorize the execution, delivery and performance of this Agreement, and upon the execution and delivery of any document to be delivered by it on or prior to the Closing Date, such document shall constitute the valid and binding obligation and agreement of said party, enforceable in accordance with its terms.

Section 6.3. <u>Not a Foreign Person</u>. The Seller is not a "foreign person" within the meaning of Section 1445 of the United States Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

The foregoing representations and warranties of Seller shall not survive Closing.

# ARTICLE VII
# REPRESENTATIONS AND WARRANTIES OF PURCHASER

To induce Seller to enter in this Agreement, Purchaser represents and warrants to Seller as follows:

Section 7.1. <u>Status and Authority of Purchaser</u>. Purchaser is a limited liability company duly organized and validly existing under the laws of the New York and has all requisite power and authority under the laws of such state under its operating agreement to enter into and perform its obligations under this Agreement and to consummate the transactions contemplated hereby.

Section 7.2. <u>Action of Purchaser</u>. Purchaser has taken all necessary action to authorize the execution, delivery and performance of this Agreement, and upon the execution and delivery of any document to be delivered by Purchaser on or prior to the Closing Date such document shall constitute the valid, binding obligation and agreement of Purchaser, enforceable against Purchaser in accordance with its terms.

The foregoing representations and warranties of Purchaser shall not survive Closing.

# ARTICLE VIII
# COVENANTS OF THE SELLER

Seller hereby covenants with Purchaser between the date of this Agreement and the Closing Date that Seller shall continue to operate the Property as currently operated in a businesslike manner consistent with its past practices, including, without limitation, entering into any

residential leases (or extensions of existing leases) in the ordinary course of business with third parties for apartment units in the Improvements and maintaining its existing insurance coverages through the Closing Date.

## ARTICLE IX
## APPORTIONMENTS; TAXES; EXPENSES

Section 9.1. <u>Apportionments</u>. Except as otherwise specifically provided below, all expenses and obligations relating to the operation of the Property (including, without limitation, costs, expenses and obligations arising pursuant to the Leases; real estate taxes; Contracts; and any annual license or permit fees relating to the Property) shall be pro-rated between Purchaser and Seller as of midnight of the day preceding the date of Closing, including the following:

(a) <u>Taxes</u>. All real estate taxes, charges and assessments affecting the Property shall be prorated on a per diem basis as of midnight of the day preceding the date of Closing, disregarding any penalty and on the basis of the fiscal year of the authority levying the same. If any of the same have not been finally assessed, as of the date of Closing, for the current fiscal year of the taxing authority, then the same shall be adjusted at Closing based upon the most recently issued bills therefor, and shall be re-adjusted promptly after final bills are issued after the Closing.

(b) <u>Utilities</u>. Charges for water, electricity, sewer rental, gas, telephone and all other utilities shall be prorated on a per diem basis as of midnight of the day preceding the date of Closing

Section 9.2. <u>Expenses</u>. Except otherwise provided herein, each party will pay all its own expenses incurred in connection with this Agreement and the transactions contemplated hereby, including, without limitation, (1) all costs and expenses stated herein to be borne by a party, and (2) all of their respective accounting, legal and appraisal fees. Seller shall pay all realty transfer taxes in connection with this transaction. Purchaser, in addition to its other expenses, shall pay for (a) all recording charges incident to the recording of the deeds for the Real Property, and (b) all title insurance premiums and any desired endorsements.

## ARTICLE X
## ASSIGNMENT AND ASSUMPTION OF LEASE OBLIGATIONS.

Subject to the terms and conditions of this Agreement, Seller shall assign to Purchaser or to Purchaser's nominee at Closing all of its right, title and interest in and to the Leases and Purchaser shall assume and agree to perform Seller's duties and obligations thereunder accruing on and after the date of Closing.

## ARTICLE XI
## DEFAULT

Section 11.1. <u>Default by Seller</u>. If Seller shall fail to perform any of the material covenants and agreements contained herein to be performed by it and such failure continues for a period of three (3) business days after notice thereof from Purchaser (except that no such notice shall be required for Seller's failure to attend Closing and consummate the transaction contemplated by this Agreement), Purchaser may, as its sole and exclusive remedies, (i) terminate

this Agreement whereupon the Deposit shall be returned to Purchaser and the parties shall have no further rights and obligations hereunder, or (ii) seek specific performance of this Agreement.

Section 11.2.  Default by Purchaser.  If Purchaser shall fail to perform any of the covenants and agreements contained herein to be performed by it and such failure shall continue for a period of three (3) business days after notice thereof from Seller (except that no such notice shall be required for Purchaser's failure to attend Closing and consummate the transaction contemplated by this Agreement and/or Purchaser's failure to pay the Deposit in a timely manner as required under this Agreement), Seller shall, as its sole and exclusive remedy, terminate this Agreement and recover the Deposit as liquidated damages, whereupon the parties shall have no further rights and obligations hereunder.  The damages that Seller would sustain as a result of any such termination would be substantial but would be impracticable and excessively costly and difficult to establish or ascertain and the parties hereto agree that Seller's sole remedy at law and in equity, shall be to recover the Deposit as liquidated damages and not as a penalty.

ARTICLE XIV
MISCELLANEOUS

Section 14.1.  Notices.  All notices and other communications required or permitted under this Agreement shall be deemed adequately given if in writing and the same shall be delivered either (i) in hand, or (ii) by mail or Federal Express or similar expedited commercial carrier, or (iii) via electronic mail or facsimile, addressed to the recipient of the notice, postpaid and registered or certified with return receipt requested (if by mail), or with all freight charges prepaid (if by Federal Express or similar carrier).  All notices required or permitted to be sent hereunder shall be deemed to have been given for all purposes of this Agreement upon the date of receipt or refusal, except that whenever under this Agreement a notice is either received on a day which is not a business day, the day of receipt or required delivery shall automatically be extended to the next business day.  All such notices shall be addressed,

If to Seller:


If to Purchaser:

615 Warburton 3 LLC
c/o Dwight City Group
787 Eleventh Avenue, 10th Floor, New York, NY 10019
Attention:  Judah L. Angster Esq./CEO
Email: ja@dwightcitygroup.com

By notice given as herein provided, the parties hereto shall have the right to change their respective addresses effective upon receipt by the other parties of such notice and each shall have the right to specify as its address any other address within the United States of America.

Section 14.4.  Severability.  If any provision of this Agreement shall be held or deemed to be invalid, inoperative or unenforceable as applied to any particular case in any jurisdiction or jurisdictions, this Agreement shall be reformed and construed in any such jurisdiction or case as if

such invalid, inoperative or unenforceable provision had never been contained herein and such provision reformed so that it would be valid, operative and enforceable.

Section 15.5. Counterparts, Etc. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and shall supersede and take the place of any other instruments purporting to be an agreement of the parties hereto relating to the subject matter hereof. This Agreement may not be amended or modified in any respect other than by the written agreement of Seller and Purchaser and, if an amendment or modification to Section 2.4, Title Company. Signatures on this Agreement which are transmitted by electronically shall be valid for all purposes, however any party shall deliver an original signature on this Agreement to the other party upon request.

Section 14.6. Governing Law. This Agreement shall be interpreted, construed, applied and enforced in accordance with the laws of the New York, without regard to conflict provisions.

Section 14.7. Performance on Business Days. In the event the date on which performance or payment of any obligation of a party required hereunder is other than a business day, the time for payment or performance shall automatically be extended to the first business day following such date.

Section 14.8. Possession. Possession of the Property shall be given to Purchaser at Closing, free of any leases except the Leases and free of other claims to or rights of possession except the Tenants, by delivery of the deed.

Section 14.9. Waiver of Tender of Deed and Purchase Monies. The formal tender of an executed Deed by Seller and the tender by Purchaser of the portion of the Purchase Price payable at Closing are hereby mutually waived, but nothing herein contained shall be construed as a waiver of Seller's obligation to deliver the Deed and/or of the concurrent obligation of Purchaser to pay the portion of the Purchase Price payable at Closing.

Section 14.10. Waiver of Trial by Jury. EACH PARTY HEREBY WAIVES, IRREVOCABLY AND UNCONDITIONALLY, TRIAL BY JURY IN ANY ACTION BROUGHT ON, UNDER OR BY VIRTUE OF OR RELATING IN ANY WAY TO THIS AGREEMENT OR ANY OF THE DOCUMENTS EXECUTED IN CONNECTION HEREWITH, THE PREMISES, OR ANY CLAIMS, DEFENSES, RIGHTS OF SET-OFF OR OTHER ACTIONS PERTAINING HERETO OR TO ANY OF THE FOREGOING.

Section 14.11. Construction. The parties acknowledge that their attorneys have reviewed and negotiated the provisions of this Agreement; therefore, the rule of construction that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments or exhibits hereto.

[Remainder of Page Intentionally Left Blank; Signature Pages Follow]

IN WITNESS WHEREOF, the undersigned parties have caused this Agreement to be executed as of the date first above written.

SELLER:

--------------------

By:_____

    Name:
    Title:

PURCHASER:

615 Warburton 3 LLC

By: _____

    Name: Yehuda Angster Esq.

    Title: Managing Member

## **EXHIBIT A**

Legal Description of Real Property

# EXHIBIT B

|        | Unit list                        | Rent |
|--------|----------------------------------|------|
| (i)    | 2H Jason Phillips 1,335          | - $  |
| (ii)   | 3C Dawn Maron 725                | - $  |
| (iii)  | 3E Noreen Scott 769              | - $  |
| (iv)   | 4E Larry Watson 769 3            | - $  |
| (v)    | 4L Hubert Huie 1,132 3           | - $  |
| (vi)   | 6D Federal National, M.A. 827    | - $  |
| (vii)  | 6H Dorothy Taylor-Jones 1,130    | - $  |
| (viii) | 6J Vance Granby 970              | - $  |
| (ix)   | 3B Vincent Ciccarello 1,069      | - $  |
| (x)    | 5H Jean Wilkinson 1,130          | - $  |