| PENACHIO MALARA, LLP | HEARING DATE AND TIME: |
| --- | --- |
| Counsel for the Debtor | NOVEMBER 10, 2022 AT 10:00 AM |
| 245 Main Street Suite 450 | |
| White Plains, NY 10601 | |
| (914) 946-2889 | |

Anne Penachio, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- --------------------------------------------------------------X
In re                                               :      CHAPTER 11
                                                              :      (Subchapter V)

BUCKINGHAM TOWER CONDOMINIUM, INC. :
f/k/a BUCKINGHAM OWNERS, INC.,          :
                                                              :      CASE NO.: 22-22403-shl
                                                              :
                                                Debtor.     :
- --------------------------------------------------------------X

## THE DEBTOR'S STATUS REPORT

**PENACHIO MALARA LLP** (the "Firm") on behalf of **BUCKINGHAM TOWER CONDOMINIUM, INC.** f/k/a **BUCKINGHAM OWNERS, INC.**, the debtor (the "Debtor") under Sub Chapter V of Chapter 11 of Title 11 of the United Code as Amended (the "Bankruptcy Code"), submits this status report and respectfully sets forth and alleges as follows:

### I.  THE DEBTOR'S BACKGROUND[1]

      1.  The Debtor is a corporation which owns approximately twenty-four (24) sponsored cooperative apartments, the vast bulk of which of which are occupied by individual shareholders and their families (the "Apartments"). The Apartments are located in the building at 615 Warburton Avenue, Yonkers, NY (the "Building"). The Building is managed by a condominium association (the "Condo Association") to which the Debtor pays monthly

---

[1] This is a fairly unusual case factually. Counsel has made every effort to present the facts as concisely as possible. Some facts are repeated for continuity,

maintenance charges. The Condo Association maintains the Building and provides for insurance coverage.

2. There are approximately 89 individual apartments in the Building – approximately 65 of which have been converted into condominiums. The 25 remaining Apartments comprise the Debtor's assets. Shareholders occupy 24 of the units. One is occupied by the Building's superintendent.

3. The Debtor's financial predicament began in or about 2008. The sponsor of the cooperative association obtained a mortgage and, despite collecting common charges from the shareholders, neglected to make payments. The mortgage holder sought to foreclose. The shareholders learned of this and ousted the sponsor from control.

4. In or about 2010, Titan Capital ID, LLC ("Titan") acquired the foreclosure judgment by Assignment and entered into a new mortgage agreement with the Debtor. According to Titan, its role was initially to serve as a "bridge lender" to provide interim financing. This role was extended to essentially a "long term" lender through a series of forbearance agreements.

5. With Titan anxious to be paid off, the sponsor (who owned a block of apartments in the Building) and the Debtor reviewed various "exit" options. It was determined that conversion of the Building's apartments from cooperative apartments (where the interest holder owns stock assigned to the apartment) to condominiums (where the interest holder owns title through a deed), would be the most efficient path to satisfy Titan. Since 2018, approximately 65 apartments have been converted from cooperative apartments to condominiums (in blocks of at least 10). Upon the conversion, Titan received payments in exchange for a release (i.e. there was a release price that Titan would accept for each unit and

in exchange for that release price, the owner of the condominium would receive a deed to the apartment).

6. As noted above, the Debtor's assets consist of the 24 Apartments that have not been converted to individual condominium units. Substantially all of them are occupied by the individual shareholder or homeowners.

7. Titan alleges that approximately $2.9 million is due (which includes approximately $250,000.00 in outstanding forbearance fees). The Debtor believes that the 25 apartments are worth approximately $5 million (at least $200,000.00 each).

8. The Debtor's goal is to formulate a plan that satisfies Titan and other creditors but also permits (i) the shareholders, many of whom are elderly, to continue to reside in the Building if they wish to; and (ii) those that wish to leave with the fair value for their units (which upon information and belief far exceeds the amount due to Titan).

9. Other than Titan, the Debtor's liabilities are limited. There are two claimants who were former owner units who paid more than their share of the "release price" to Titan (i.e. it paid more than its pro rata share to Titan). Upon information and belief, approximately $800,000.00 is due to creditors other than Titan.

II. **CHAPTER 11 STATUS AND NEW DEVELOPMENTS**

10. Since the filing, the Debtor has continued in the management of its property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. Heidi Sorvino serves as Sub-Chapter V Trustee (the "SubV Trustee").

11. The Debtor is current with Operating reports having filed the September report. It intends to file the October report on or before November 20, 2022.

12. The claims bar date for non-governmental entities was September 16, 2022. Applications for the retention of special real estate counsel, Ranieri, Light & O'Dell, and accountant, DeMilia and Honigman LLP, are pending and the undersigned is awaiting comments from the US Trustee.

13. The Debtor uses the services of Anker Management (the "Managing Agent"). An application for the Managing Agent's retention, to the extent required, will be forthcoming. The managing Agent's role is fairly limited. It charges a "flat fee" of $1,000.00 per month.

14. This Court approved the use of cash collateral on an interim basis (Dkt. No. 32). The Debtor has complied with the terms of the cash collateral order and has made payments required thereunder and will continue to do so.

15. Counsel has been in communication with the SubV Trustee and the Debtor's most significant creditors including: Titan, the City of Yonkers, the Condo Association, and TB Yonkers Holdings, LLC/Jason Harkavy.

16. Counsel held a meeting on the evening August 24, 2022. All shareholders were invited to attend. The shareholders were presented with various "exit' options including (i) sale to Dwight City Group ("Dwight") (which owns other units in the Building); (ii) sale at Auction or through a broker; and (iii) purchase of a specific unit by the shareholder. Many shareholders attended and expressed their views and preferences. Several shareholders requested additional information which was provided to them.

17. Following the meeting, the Debtor engaged in further discussions to sell the Apartments with Dwight. Dwight formalized an amended offer. The amended offer provides shareholders with the option of leaving immediately and surrendering possession or

staying pursuant to a two year lease with an option to purchase their unit. The price per square foot varies with those leaving receiving a higher price plus a $5,000.00 incentive for leaving.

18. After "final" contracts were circulated, Dwight requested numerous additional changes. In seeking further modifications, Dwight explained that the rise in interest rates changed its economic position.

19. The Debtor spent many hours negotiating contract terms and drafting revisions.

20. On Sunday, November 6, 2022, Dwight, through its principal, Judah Angster, indicated twice (at 12:33 PM and 1:20 PM) that fully executed contracts would follow. See Exhibit A. The Debtor worked all evening on November 6 revising the Sub Chapter V Plan for immediate filing.

21. Thereafter, at 2:06 AM, counsel received an email from Mr. Angster indicating that Dwight has withdrawn from the deal but would "provide the bankruptcy court with a stalking horse bid at $3.2 million for all of the units." See Exhibit B. Given the abrupt "pull out" by Dwight (which provided repeated assurances that it could close), the Debtor has serious questions regarding Dwight's motives and doubts about the viability of any offer by Dwight. The Debtor would seriously consider whether a "break out fee" would be fair and reasonable under the circumstances.

22. Counsel will review alternative strategies with the Debtor's principal and counsel for several of the shareholders (Todd Cushner), the SubV Trustee and counsel for Titan.

23. Given the foregoing, the Debtor requests that the Court schedule a "follow up" conference in the upcoming weeks to permit the Debtor to consider alternatives including an auction sale of some or all of the apartments. Should an auction be the most

viable course of action, counsel will need to discuss terms of a "carve out" with Titan and the SubV Trustee.

Dated: November 7, 2022
       White Plains, NY

**PENACHIO MALARA, LLP**

/s/ Anne Penachio
Anne Penachio, Esq.
Counsel to the Debtor
245 Main Street-Suite 450
White Plains, NY 10601
(914) 946-2889