KIRBY AISNER & CURLEY LLP  
*Counsel for Secured Creditor Titan Capital ID, LLC*  
700 Post Road, Suite 237  
Scarsdale, New York 10583  
(914) 401-9500  
Erica R. Aisner, Esq.  
eaisner@kacllp.com

Hearing Date: February 23, 2023  
Hearing Time: 2:00 p.m.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
---------------------------------------------------------------X  
In re:

BUCKINGHAM TOWER CONDOMINIUM, INC.,

                                                            Debtor.  
---------------------------------------------------------------X

Chapter 11  
Case No: 22-22403(shl)

**RESPONSE OF TITAN CAPITAL ID, LLC TO FILED OBJECTIONS  
TO RETENTION OF REAL ESTATE BROKER AND APPROVAL OF SALE PROCEDURES**

       Titan Capital ID, LLC ("Titan"), by its counsel Kirby Aisner & Curley LLP, as and for its response to the objections by certain shareholders[1] (the "Shareholders") to the motions (the "Motions") by the debtor, Buckingham Tower Condominium, Inc. (the "Debtor") to the retention of Maltz Auctions, Inc. [ECF No. 64] ("Broker") and to approve sale procedures for the marketing and sale of the Debtor's real property [ECF No. 70] ("Sale Procedures"), respectfully sets forth as follows:

PRELIMINARY STATEMENT

       The Shareholder's objections to the Debtor's Motions should be overruled as they are nothing more than a last-ditch attempt to delay the inevitable. The Debtor financial struggles should come as no shock to the Shareholders. In fact, the Debtor was facing foreclosure and sale when Titan was contacted to refinance the foreclosing lender over a decade ago – a loan which was supposed to be a short-term bridge loan. Difficult though it may be to accept, a sale of the Debtor's property is the only way it can satisfy its creditors. Further delaying the auction will only harm the estate, its creditors and the Shareholders as the secured and administrative claims in the estate continue to grow with each passing day.

---

[1] Vance Grandy, Robert Phillips, Noreen Scott, Mari DaSilva, Rosalind Rodgers, Roxanna Brown, Eloise President and Paul and James Wilkenson.

I.   THE SHAREHOLDERS OBJECTIONS SHOULD BE OVERRULED

1. The objection to the retention of the Broker [ECF No. 69] (the "Broker Objection") and to the Sale Procedures [ECF No. 79] (the "Sale Objection") (the Broker Objection and the Sale Objection are collectively, the "Objections") filed by the Shareholders should be overruled as the Objections fail to set forth a single relevant factual or legal basis to deny the Debtor's Motions.

   A. *The Shareholders claim that the proposed retention and sale are "premature" because they have been "unable to obtain the necessary information as to the prior sales in the building and as [sic] the use of monthly maintenance payments by shareholders." (Broker Objection, ¶2).*

2. First, since the Objections were filed, a history of release prices were provided to counsel to the Shareholders by the undersigned. The response is quite simple, three (3) bulk unit sales have occurred and in connection with each, Titan released its lien on the units sold in exchange for a paydown on its loan. The release price was arrived at through a calculation which took into consideration the amount of collateral being sold, the amount of collateral remaining and the remaining principal balance due to Titan. Specifically, in November 2018, 15 Units (a total of 14,588 square feet) were sold and the aggregate release price was $1,032,944.72 which was approximately $71 per square foot. In December 2020, 38 Units (a total of 31,972 square feet) were sold and the aggregate release price was $2,375,000 which was approximately $74 per square foot. Finally, in November 2021, 7 Units (a total of 6,382 square feet) were sold and the aggregate release price was $702,020 which was approximately $110 per square foot.

3. As for the use of monthly maintenance payments by the shareholders (which we presume they meant, by the Debtor), the Debtor has made it clear on the record at several hearings as well as at the 341A meeting, the maintenance of the building is handled by the Condominium and its management company, not the Debtor. Furthermore, the Debtor's monthly operating reports and its cash collateral budget indicate that the Debtor has very few disbursements; it pays Titan, common charges to the Condominium and real estate taxes. As such, it does not appear that the information that the Shareholders seek is any great mystery and more importantly, it has no bearing on the need for the Debtor to proceed to auction.

   B. *The Shareholders claim that they intend to take the 2004 examination of the Debtor's principal as they claim that he has withheld information and they 'question' his authority." (Broker Objection ¶3); See also, (Sale Procedures Objection, ¶3).*

2

4. The Shareholders' right to request a 2004 Order should have no bearing on the Court's decision to grant or deny the retention of the Broker and approval of Sale Procedures. It is puzzling how or why the Shareholders have chosen to raise this issue at this time, or at all for that matter. Frankly it appears to be contrary to their own interests. This Chapter 11 was filed to stop the foreclosure by Titan of the Debtor's property which was imminent. This is not in dispute. Were it not for the filing of this case, the property would have been sold long ago on the courthouse steps. Even if the Shareholders are successful in proving their suggestion that authority for the filing was lacking, which Titan does not suggest, the result would likely be either the dismissal of the case and the continuation with the planned foreclosure sale or perhaps the appointment of a Chapter 7 or 11 trustee, all of which would have the same result, the sale of the property. However, in each case, the recovery to the Shareholders would be reduced as a result of the increase in the secured and administrative costs with the passage of time.

C. *The Shareholders claim that there "appears to be no urgency in selling the units." (Broker Objection ¶5) See also, (Sale Procedures Objection, ¶9).*

5. On the contrary, there is great urgency here. First, the Debtor has, upon information and belief, over $300,000 in outstanding real estate taxes due to the City of Yonkers. With each passing day that these monies remain outstanding they continue to accrue interest. As the debt to the City of Yonkers grows, Titan's collateralization shrinks. The Debtor has not remitted adequate protection to address this particular diminution in Titan's position and, upon information and belief, the Debtor is not financially in a position to do so. Moreover, it appears that many of the Debtor's interest holders are in arrears on their common charges which in turn has resulted in a significant claim against the estate[2]. As these arrears grow and the Debtor is unable to remain current with its obligations to the Condominium Association, the financial stability of the property is jeopardized and its physical condition, and value, will continue to deteriorate. Finally, as the Shareholders point out, the real estate market is depressed, and interest rates are

---

[2] The Condominium Association has filed a proof of claim in the Chapter 11 case (assigned claim number 4) in the amount of $148,795.97.

rising (Broker Objection, ¶5). Each day that the auction is delayed stands to reduce the ultimate recovery by the Debtor, to the detriment of all creditors of the estate, including the Shareholders themselves.

    D. *The Shareholders claim that the Debtor has not afforded the Broker sufficient time to market the Debtor's property. (Sale Procedures Objection, ¶10-11).*

6. The assumption made by the Shareholders as to the amount of time that the Broker requires to do his job is without factual basis. In fact, the undersigned has confirmed directly with the Broker that the Debtor's proposed timeline was created with and approved by the Broker who does not believe that any increased time is necessary to yield a successful auction outcome. In fact, he confirmed to the undersigned that he has already done his preliminary work and is ready to proceed once the Court approves his retention. The Broker is a widely respected and experienced real estate broker and auctioneer in this District who is engaged by trustees and Debtor's time and time again. His reputation speaks for itself with respect to the best way to market and sell a property.

    II.    <u>PERMITTING CREDIT BIDDING FOR SUBORDINATE LIEN HOLDERS IS PREMATURE, IF NOT INAPPROPRIATE</u>

7. Permitting credit bidding by any purported subordinate lien holder would only stand to compromise the integrity and the outcome of the auction.

8. First, it is not entirely clear what the net sale proceeds will be. As the Debtor has noted in its recent supplemental filing [ECF No. 83] ("<u>Sale Supplement</u>"), the amounts due to Yonkers have not yet been determined. (Sale Supplement, ¶7). Also, no recent title report has been run to determine what other costs may need to be paid at closing. As such, it is unclear at this time whether the alleged subordinate lien holders have fully secured claims on which a credit bid could be based.

9. Further, the Sale Supplement has raised serious questions regarding the validity of a lien held by TB Yonkers. While presumably any credit bid asserted by a subordinate creditor would need to include a cash component to satisfy senior lien holders on the property, Titan has a vested interest, as should every other constituency, in ensuring that the auction process is successful. It is respectfully submitted that permitting TB Yonkers to credit bid when an affiliate is the stalking horse, the lien itself appears to be

disputed by the Debtor and certain closing costs and payoffs are unknown at this time only stand to compromise the integrity of the process and risk an outcome with unnecessary complications.

10. Finally, upon a review of the proof of claim filed by Mr. Guerrero, there does not appear to be any basis for a secured claim. The claim, asserted by 615 Warburton Holding Group, annexes a Purchase Agreement between the Debtor and Mr. Guererro for unit 5L, dated July 7, 2015, for $69,083.69. It is completely devoid of any support for a lien on the Debtor's property. The undersigned has also reviewed a title report from 2021 (the last paydown on Titan's loan) and there was no indication anywhere in that report of a lien held by either Mr. Guerrero or 615 Warburton Holding Group. As such, it would seem completely improper to permit him the right to credit bid at auction based upon the claim asserted. A copy of the 615 Warburton proof of claim is annexed hereto as Exhibit "A".

III. CONCLUSION

11. This subchapter V case has been pending for nearly eight (8) months during which time there has been little progress. Meanwhile, Titan has remained patient, awaiting its exit from this loan which is over a decade past due. While it may be difficult for the Shareholders to accept, there is simply no other solution for the Debtor and raising issues of authority don't warrant any further delays in the case. Each day that passes, the creditors and interest holders are further compromised as the secured and administrative claims against the estate continue to grow thereby reducing the ultimate distribution in this case.

12. Based upon the foregoing, it is respectfully requested that this Court approve the retention of the Broker and approve the Sale Procedures, together with such other and further relief as the Court deems just and proper.

Dated: Scarsdale, New York
      February 22, 2023

KIRBY AISNER & CURLEY LLP
*Counsel for Secured Creditor Titan Capital ID, LLC*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500

By: */s/ Erica R. Aisner*
      Erica R. Aisner, Esq.