UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

BUCKINGHAM TOWER CONDOMINIUM, INC.
f/k/a BUCKINGHAM OWNERS, INC.,

CHAPTER 11
(Subchapter V)

CASE NO.: 22-22403-shl

Debtor.
-----------------------------------------------------------------X

**ORDER APPROVING (I) BID PROCEDURES FOR THE SALE OF ALL OF THE DEBTOR'S APARTMENT UNITS LOCATED AT 615 WARBURTON AVENUE, YONKERS, NEW YORK 10701 FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (II) APPROVING THE TERMS OF PURCHASE AND SALE AGREEMENTS WITH 615 WARBURTON 3, LLC AND ARIA CAPITAL LLC; (III) APPROVING THE MANNER AND EXTENT OF NOTICE AND PROCEDURES FOR SUBMITTING HIGHER AND BETTER OFFERS; (IV) SCHEDULING THE AUCTION; (V) SCHEDULING A HEARING CONFIRMING THE RESULTS OF THE SALE PROCESS; (VI) AUTHORIZING THE DEBTOR TO CLOSE ON THE SALE TO THE PROPOSED PURCHASERS OR ALTERNATE PURCHASERS: (VII) GRANTING THE SUCCESSFUL BIDDER GOOD FAITH STATUS; (VIII) WAIVING ANY STAY OF THE SALE ORDER; (VIII) GRANTING SUCH OTHER AND FURTHER RELIEF AS IS APPROPRIATE**

**UPON** the application dated January 31, 2023 and filed as Dkt. No. 70 and the supplemental application dated February 21, 2023, Dkt No. 83 (collectively, the "Motion") of **BUCKINGHAM TOWER CONDOMINIUM, INC.** f/k/a **BUCKINGHAM OWNERS, INC.,** as debtor and debtor in possession (the "Debtor"), through its counsel, **PENACHIO MALARA, LLP**, pursuant to Sections 105, 363(b), (f) and (m) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9007 for an order (i) approving bidding procedures (the "Bidding Procedures" or "Bid Procedures") for the sale (the "Sale") of all of the Debtor's apartment units located at 615 Warburton Avenue, Yonkers, New York 10701 identified as 7F; 2E/F; 3K; 4D; 4J; 6N; 7C; 7D; 6G; 2H; 3C; 3E; 4E; 4L; 6D; 6H; 6J; 6L; 3B; 5H;  5L; 1L; 7L; 7K; and 5K (collectively the "Property") free and clear of all liens, claims, encumbrances and other interests, (iv) approving the terms of purchase and

1

sale agreements with 615 Warburton Avenue 3, LLC ("Warburton 3") and Aria Capital LLC ('Aria"); (v) approving the manner and extent of notice and procedures for submitting higher and better offers; (vi) scheduling a hearing to confirm the results of the sale process (the "Sale Hearing'); (vii) authorizing the Debtor to close on the sale to the proposed purchasers or alternate purchasers; (viii) granting the successful bidder good faith status; (ix) waiving any stay of the sale order; and (x) granting such other relief as is appropriate; and it appearing that notice of the Motion was duly served on interested parties in accordance with applicable rules as reflected in the Affidavit of Service filed as Dkt. No.71 and the Certificate of Service filed as Dkt. No. 72; and it further appearing that limited objections to the relief sought were interposed by TB Yonkers Holding ("TB") (Dkt. No. 81) and shareholders Richard Brown, Roxana Brown, G. Palmelia Granby, Vance E. Granby, Elouise President, and Noreen R. Scott (collectively, the "Objecting Shareholders) (Dkt. No. 69); it further appearing that replies to the objections were filed by the Debtor and Titan Capital ID, LLC ("Titan") (Dkt. Nos. 83 and 84 respectively); and it further appearing that a hearing on the merits of the Motion was held before the Court; and the Sub Chapter V trustee, Heidi Sorvino, having appeared at the hearing and expressed her support of the Motion; and good cause appearing therefore, it is hereby

    FOUND AND DETERMINED AS FOLLOWS:

    A.    The Court has jurisdiction over this matter and over the property of the Debtor and the bankruptcy estate pursuant to 28 U.S.C. § 1334 and § 157(a).

    B.    This is a core proceeding to 28 U.S.C. § 1334 and § 157(b)(2)(A), (N) and (O).

    C.    The statutory predicates for relief are sections 105, 363, 503, 365, and 507 of the Bankruptcy Code and bankruptcy Rules 2002 and 6004.

    D.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil

Procedure as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry as set forth herein.

E. Good and sufficient notice of the relief sought in the Motion has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the proposed Bidding Procedures) has been afforded to all interested persons and entities including, but not limited to: (i) the Office of the United States Trustee; (ii) the Sub Chapter V trustee; (iii) all parties that have filed a notice of appearance and demand for service of papers in this bankruptcy case under Bankruptcy Rule 2002; (iv) all creditors; (v) Warburton 3; (vi) Aria; (vii) the taxing authorities and the (viii) shareholders of the Debtor.

F. The Debtor has articulated good and sufficient reasons for approving (i) the Bidding Procedures, and (ii) the form and manner of notice of the Motion as it relates to the Sale and the Sale Hearing.

G. The Debtor has articulated good and sufficient reasons for scheduling the Sale Hearing.

F. The Bid Procedures were proposed in good faith and are fair and reasonable.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted to the extent provided for herein.

2. The Objections of TB Yonkers and the Objecting Shareholders are overruled.

3. The contracts of Warburton and Aria are approved subject to higher and better offers as set forth in the Bidding Procedures.

4. The Debtor is authorized to conduct an auction for the sale of the Property in accordance with the Bidding Procedures.

5. The Auction shall include unit 5L.

6. The Debtor's Auctioneer shall file with the Bankruptcy Court a Report of Auction

no later than two (2) business days after the auction which shall include, but not be limited to, the bidders in attendance at the auction and the identity of the successful bidders and amount of bid and the identity of the back-up bidder and amount of bid, if any.

7. The Bidding Procedures annexed to this Order as Exhibit "A" are hereby approved.

8. A hearing shall be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, on April 13, 2023 at 10:00 AM Eastern Time, or as soon thereafter as counsel may be heard (the "Sale Hearing"), subject to the availability of the Court, to confirm the results of the Auction sale, authorize the Sale of the Property, based upon the results of the Auction, and to grant such other related relief as may be deemed necessary or proper by the Court.

9. The successful bidder at the Auction shall receive title of the Property free and clear of all liens, claims and encumbrances except for any permitted exceptions with any liens, claims and encumbrances attaching to the proceeds of the sale.

10. The successful bidder at the Auction shall be afforded good faith status ***provided it satisfies the requirements for such a finding under applicable law.***.

10. No lien holder, other than Titan, may credit bid under 11 U.S.C. § 363(k). However, should TB Yonkers or Jose Guerrero establish the validity, extent and secured status of their claims to the satisfaction of the Debtor, Titan and the Sub Chapter V trustee, or the Court upon filing of a proper Motion, they may seek a credit towards the amount owed, in full or in part, against the purchase price in the event that they are a successful bidder.

11. Notwithstanding any provisions in the bidding procedures to the contrary, Titan shall be deemed a qualified bidder in all respects and shall not be required to post a deposit in order to bid at the auction.

12. The Sale Hearing may be adjourned from time to time, upon consent of Titan,

without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or ***by notice filed on the docket specifying the adjourned date of the Sale Hearing.*** ~~on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date~~.

13. Objections to the relief to be considered at the Sale Hearing shall be filed by April 6, 2023 at 5:00 p.m. with the Bankruptcy Court at the Court's website https://ecf.nyeb.uscourts.gov/cgi-bin/login.pl (password and login required), with a copy delivered directly to Chambers and served upon: (a) counsel to the Debtor; (b) counsel to any Purchaser; (c) counsel to Titan, (d) the Office of the United States Trustee; and (e) Parties filing a Notices of Appearance.

14. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

15. Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), this Bidding Procedures Order shall be effective upon entry. The Debtor shall serve this Order along with the Bidding Procedures upon (i) the U.S. Trustee; (ii) the Sub Chapter V trustee (iii) taxing authorities, (iv) all creditors who filed claims against the Debtor, (v) creditors listed by the Debtor on its Schedules as holding unliquidated, undisputed and non-contingent claims, (vi) any potential buyers known by the Debtor, (vii) the Debtor's shareholders; (viii) Maltz Auctions and (ix) Parties filing Notices of Appearance on or within 3 business days of entry.

17. Notwithstanding any language in the Bidding Procedures or any pleading to the contrary, the sale is subject to confirmation and approval by the Court.

18. Notwithstanding of the Bid Procedures language in the Bidding Procedures or any pleading to the, the sale can only be cancelled by the Debtor for good cause shown in consultation with the Titan and subject to Court approval.

19. Notwithstanding any provision in the Bidding Procedures or any pleading to the contrary, the auction sale shall take place on March 29, 2023.

20. To the extent that there are any conflicts between the terms of the Bid Procedures and this Order, this Order controls.

Dated: White Plains, New York
        March 8, 2023

                                        ***/s/ Sean H. Lane***
                                        United States Bankruptcy Judge

# TERMS AND CONDITIONS OF SALE OF APARTMENTS LOCATED AT 615 WARBURTON AVENUE, YONKERS, NEW YORK 10701

1. These Terms and Conditions of Sale (these "Terms of Sale") are being promulgated in connection with the public auction sale (the "Auction Sale") by Buckingham Tower Condominium, Inc. f/k/a Buckingham Owners, Inc. (the "Debtor") the Chapter 11, Subchapter V debtor in the bankruptcy case pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 22-22403 (SHL), of the Debtor's estate's rights, title and interest in and to the apartments located at 615 Warburton Avenue, Yonkers, New York 10701 (collectively, the "Real Property").

2. The Auction Sale shall be conducted in 3 tranches:

    Tranche A – 19 Units identified as 7F; 2E/F; 3K; 4D; 4J; 6N; 7C; 7D; 6G; 2H; 3C; 3E; 4E; 4L; 6D; 6H; 6J; 3B; and 5H

    Tranche B – 4 Units identified as 1L, 7L, 7K and 5K

    Tranche C – Any individual units including 5L

3. The Auction Sale is being conducted pursuant to sections 363(b) and (f) of Title 11, United States Code (the "Bankruptcy Code"), and shall be held live on March 29, 2023 at 11:00 a.m. (the "Auction Date") at the Maltz Auction Gallery, 39 Windsor Place, Central Islip, NY 11722. Remote bidding will be made available to prequalified bidders.

4. In order to be permitted to bid on Tranche C, on or before March 15, 2023, and Tranche A and/or B, on or before March 27, 2023, each prospective bidder must deliver to Maltz Auctions (the "Broker"), by wire transfer, certified check or bank check a deposit in amounts set forth below (the "Qualifying Deposit") payable to "Penachio Malara, LLP", counsel to the Debtor, which amount shall serve as a partial good faith deposit against payment of the purchase price, which shall be equal to the successful bid submitted at the Auction Sale, by such competing bidder as the Debtor, in consultation with Maltz, determines to have made the highest or best bid for the Real Property (the "Successful Bidder"). Any Qualified Bulk Bidder in Tranche A or B can bid on one or more individual units Tranche C and no additional deposit will be required for those units in their existing bulk bid. However, an additional $20,000.00 per unit will be required for any additional units bid upon.

    The Qualifying Deposit for bidders in Tranche A is $300,000.00
    The Qualifying Deposit for bidders in Tranche B is $75,000.00
    The Qualifying Deposit for bidders in Tranche C is $20,000.00 per unit

5. Except as provided herein, the Auction Sale of the Real Property will be subject to a buyer's premium (the "Buyer's Premium") in the amount of six percent (6%) of the gross sales price of the Real Property. The Buyer's Premium shall be added to the final sale price and payable by the successful bidder(s) of the Real Property, and the Debtor and the Debtor's estate shall not be responsible to pay any portion of the Buyer's Premium.

Exception for Current Occupants and/or Shareholder – Tranche C

Additionally, in the event an individual unit occupant or shareholder bids on a unit they presently occupy in Tranche C, such bidder shall only pay a two (2%) buyer's premium on the value equivalent to the price attributed to such unit in the stalking horse bid.

6. MINIMUM BIDS

Minimum bid for bulk sale of units in Tranche A – $2,950,000.00

Minimum bid for bulk sale of units in Tranche B – $625,000.00

Minimum bids for each individual unit in Tranche C are as follows:

| UNIT | MINIMUM BID |
|------|-------------|
| 1L   | $164,140.00 |
| 2E/F | $251,840.00 |
| 3B   | $171,040.00 |
| 3K   | $155,040.00 |
| 4D   | $132,320.00 |
| 4J   | $155,200.00 |
| 5K   | $140,505.00 |
| 5H   | $180,800.00 |
| 5L   | $164,140.00 |
| 6N   | $103,200.00 |
| 7C   | $116,000.00 |
| 7D   | $132,320.00 |
| 6G   | $134,080.00 |
| 2H   | $213,600.00 |

| | |
|---|---|
| 3C | $116,000.00 |
| 3E | $123,040.00 |
| 4E | $123,040.00 |
| 4L | $181,120.00 |
| 6D | $132,320.00 |
| 6H | $180,800.00 |
| 6J | $155,200.00 |
| 7F | $128,640.00 |
| 7L | $164,140.00 |
| 7K | $140,505.00 |

Should the Debtor receive a high offer for a unit in Tranche C, such unit will be removed from a bulk sale in Tranche A or Tranche B and the bulk price shall be reduced accordingly.

6. Titan Capital ID, LLC ("Titan') shall be afforded the opportunity to submit a credit bid in the amount of its claim plus any additional amounts due. In the event that Titan is the successful bidder, the buyer's premium shall be ½%.

7. Within 48 hours after conclusion of the Auction Sale, the Successful Bidder shall deliver to the Debtor by wire transfer, certified check, or bank check an amount equal to 10% of the Purchase Price, less the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit"), plus the Buyer's Premium.

8. The Buyer's Premium shall be deemed to have been earned immediately upon the fall of the hammer and is due within forty-eight (48) hours after conclusion of the Auction Sale. Failure of the Successful Bidder to tender the ten (10%) percent Deposit of the high bid at auction and the six (6%) percent Buyer's Premium (or such other Buyer's Premium as set forth hereunder) within forty-eight (48) hours after conclusion of the Auction Sale shall result in an immediate default under these Terms of Sale and the Memorandum of Sale, and shall result in the forfeiture of all earnest monies paid, including the Qualifying Deposit, the Deposit and the Buyer's Premium.

9. The Successful Bidder and the competing Bidder who the Debtor, in consultation with Maltz and Titan, determines to have made the second highest or best bid for the Real Property (the "Second Highest Bidder") must execute, and thereby agree to be bound by (i) these Terms of

Sale, and (ii) a Memorandum of Sale. At the conclusion of the Auction Sale, the Broker will return the Qualifying Deposits to all other bidders, except to the Successful Bidder and the Second Highest Bidder. The Second Highest Bidder's Qualifying Deposit shall be returned within three (3) business days from the date the Attorney receives the full Deposit plus the Buyer's Premium from the Successful Bidder. If the Successful Bidder fails to timely remit the full Deposit and Buyer's Premium, the Second Highest Bidder shall have three (3) business days from notice thereof to remit same.

10. The closing of the transaction contemplated by these Terms of Sale (the "<u>Closing</u>") shall take place at the offices of Penachio Malara, LLP, 245 Main Street, Suite 450, White Plains, NY 10601, commencing at 11:00 a.m. (EST) on a date to be determined, by mail, or by another location as agreed upon by Attorney. The Closing shall occur within thirty (30) days after the entry of the Sale Order (as defined in ¶13, below). **TIME BEING OF THE ESSENCE as to the Successful Bidder or the Second Highest Bidder, as the case may be**, although the Closing Date may be extended solely by the Debtor at his option and discretion.

11. The Successful Bidder or the Second Highest Bidder, as the case may be, shall be obligated to close title to the Real Property. There are no contingencies of any kind or nature that will permit the Successful Bidder or the Second Highest Bidder, as the case may be, or any other qualifying bidder, to cancel or avoid their obligation under these Terms of Sale, other than the ability to deliver insurable title. In the event that the Successful Bidder or the Second Highest Bidder, as the case may be, fails to close title to the Real Property for any reason whatsoever, including failure to tender the entire Purchase Price at the Closing, the Successful Bidder shall immediately and without then need for further Court Order, forfeit (a) the Deposit to the Debtor's estate, and (b) the right to obtain title to the Real Property. In the event that (a) the Debtor is unable to deliver the Real Property in a manner consistent with these Terms of Sale, or (b) the Court fails to enter the Sale Order (as defined in ¶13, below), the Deposit will not be forfeited, and the Deposit shall be returned to the Successful Bidder or the Second Highest Bidder, as the case may be, promptly, without interest. In the event that the Debtor fails to close, it is acknowledged that return of the Deposit is the Debtor's only obligation hereunder, and the Successful Bidder and/or the Second Highest Bidder will have no recourse against the Debtor's estate, the Debtor or the Debtor's retained professionals. As stated above, **<u>Time is of the Essence against the Successful Bidder or the Second Highest Bidder, as the case may be.</u>**

12. The Successful Bidder or the Second Highest Bidder, as the case may be, further acknowledges that it will be responsible for the completion of any forms, if required, to effectuate the transfer of the Real Property, and shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other Real Property inspections; appraisals, reports and other costs of Real Property due diligence; and County, State, or other real property transfer, deed or documentary tax, flip tax, or other taxes imposed upon the sale due in connection with the transfer of the Real Property from the Debtor at Closing.

13. The Successful Bidder and the Second Highest Bidders acknowledge that they will be responsible for the completion of any PREP forms, if required. The Debtor shall not be required to execute any form of title affidavit (but may in its sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions. The Successful Bidder or the Second Highest Bidder, as the case may be, acknowledges that it will be responsible for the preparation of all Closing documents required

including, but not limited to, transfer tax forms.

14. The Successful Bidder or the Second Highest Bidder, as the case may be, shall have demonstrated, to the sole satisfaction of the Debtor or the Court, as the case may be, evidence of its ability to conclude the transaction upon these Terms of Sale, without delay. The Debtor reserves the right to reject any offeror, who in the sole discretion of the Debtor is not financially capable of consummating the purchase of the Real Property. **Expenses incurred by the Successful Bidder or the Second Highest Bidder, as the case may be, or any other competing bidder concerning any due diligence, such as obtaining title reports and other due diligence information, shall be the sole responsibility of such bidder, and under no circumstances shall the Debtor's estate, the Debtor or the Debtor's retained professionals be responsible for, or pay, such expenses.**

15. The Debtor shall seek an order of the Bankruptcy Court (the "Sale Order") prior to the Closing to confirm the result of the Auction Sale of the Real Property to the Successful Bidder and the Second Highest Bidder in the event the Successful Bidder defaults.

16. In the event that the Successful Bidder for the Real Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms of Sale, the Debtor, at his sole option and discretion, shall be authorized to sell the Real Property to the Second Highest Bidder, without any further notice, and without giving the Second Highest Bidder credit for the Successful Bidder's Deposit, plus the Buyer's Premium, forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtor deems appropriate. Should the Second Highest Bidder fail to close on the Real Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Debtor to the Second Highest Bidder of its obligations to Close, the Debtor shall be authorized to sell the Real Property to the next highest or best bidder at the Auction Sale, without the necessity of any further notice. All bidders who execute a copy of these Terms of Sale shall be bound to all terms and conditions contained herein.

17. The Real Property is being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of any and all liens or adverse claims to title, of whatever kind or nature, and subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) all leases, approvals for ownership, and/or occupancies, if any, as may exist or encumber the Real Property or any portion(s) thereof; and (f) environmental conditions. By delivering their respective Qualifying Deposit, all bidders acknowledge that they have had the opportunity to review and inspect the Real Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Real Property in making their bids. The Debtor, the Debtor's estate, the Debtor's retained professionals, the Debtor, and any of the Debtor' retained professionals make no representations or warrantees with respect to the permissible uses of the Real Property. All bidders acknowledge that they have conducted their own due diligence in connection with the Real Property and are not relying on any information provided by the Debtor, the Debtor's retained professionals, the Debtor or the Debtor's retained professionals.

18. Each bidder hereby expressly agrees and acknowledges that the Debtor, the Debtor's retained professionals, the Debtor and the Debtor's retained professionals have not made any representations or warranties, nor is such bidder relying on any statements or information provided by the Debtor, the Debtor's retained professionals, the Debtor and the Debtor's retained professionals, including, but not limited to any representations, warranties, statements or information as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Real Property or this Auction Sale, which might be pertinent to the purchase of the Real Property, including, without limitation, (i) the current or future real estate or other tax liability, assessment or valuation of the Real Property or transfer thereof; (ii) the potential qualification of the Real Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Real Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (iv) the current or future use of the Real Property; (v) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; and (vi) whether any and all documents in the Debtor's possession that relate to the Loans are original documents with wet ink signatures. The Debtor and the Debtor's estate is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Real Property, made or furnished by the Debtor, the Debtor or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Debtor or the Debtor. **The Real Property shall be delivered subject to any and all leases and occupancies at the time of closing.**

19. The Debtor shall convey the Real Property by delivery of a Bargain and Sale Deed with Covenants. The quality of title shall be that which a reputable title insurance company doing business in the State of New York is willing to approve and insure. In the Debtor's sole discretion, he may arrange for the issuance of a title insurance by such a company, if the Successful Bidder or the Second Highest Bidder is unable to so, at the sole cost and expense of the Successful Bidder or the Second Highest Bidder, as the case may be.

20. The Debtor, the Debtor's retained professionals, the Debtor, and the Debtor's Estate shall not be liable or responsible for the payment of fees of any broker or other agent.

21. Nothing contained in these Terms of Sale is intended to supersede or alter any provisions of the Bankruptcy Code, or otherwise interfere with the jurisdiction of the Bankruptcy Court. These Terms of Sale are subject to modification as may be directed by the Debtor or by the Bankruptcy Court. The Debtor reserves the right to modify these Terms of Sale, subject to the foregoing, to maintain consistency with the provisions of the Bankruptcy Code and/or Orders of the Bankruptcy Court.

22. By tendering the Deposit and executing these Terms of Sale, all bidders acknowledge that they have read all of the terms and conditions contained herein, and have agreed to be bound by the same. Moreover, all bidders who execute these Terms of Sale warrant and

represent that they have the full power and authority to execute and deliver these Terms of Sale and to perform the obligations hereunder. These Terms of Sale constitute a valid and legally binding obligation of the bidder who executes them, and is enforceable upon such bidder in accordance with these Terms of Sale.

23. These Terms of Sale shall be binding upon, and inure to the benefit of the Parties hereto, and their respective successors, designees and/or permitted assigns. No Party hereto may assign either these Terms of Sale or any of the rights, interests or liabilities hereunder without the prior written approval of the other Party.

24. Each bidder who tenders a Qualifying Deposit and the Debtor will bear their own costs and expenses (including legal fees and expenses) incurred in connection with these Terms of Sale and the transaction contemplated hereby.

25. By making a bid for the Real Property, all bidders will be deemed to have acknowledged having read and understood these Terms and Conditions of Sale and have agreed to be bound by them.

26. If the Debtor is unable to deliver the Real Property in accordance with these Terms of Sale for any reason whatsoever, his only obligation will be to refund the Deposit and the Buyer's Premium, <u>without</u> interest, to the Successful Bidder or the Second Highest Bidder, as the case may be, and upon such refund, the Successful Bidder or the Second Highest Bidder, as the case may be, will have no claim or recourse against the Debtor's estate, the Debtor or the Debtor's retained professionals, including his counsel and the Broker, and shall have no further rights under these Terms of Sale or Memorandum of Sale.

27. The Debtor reserves his right to withdraw the Real Property from the Auction Sale, either prior, or subsequent to the Auction Sale, for any reason whatsoever, as he deems necessary or appropriate.

28. The Auction Sale of the Real Property is subject to the approval of the Bankruptcy Court.

29. The Successful Bidder shall receive credit for security deposits, if any

30. To the extent that the Successful Bidder or the Second Highest Bidder, as the case may be, is procured through the services of a Licensed Real Estate Co-Broker, the only commission that will be paid is to the Licensed Real Estate Co-Broker who registers the Successful Bidder and/or the Second Highest Bidder in accordance with the Broker Participation Agreement, which any such Licensed Real Estate Co-Broker must execute in order to register a bidder and has received confirmation of receipt and acknowledgement of such valid registration by the Broker. For the avoidance of doubt, a Broker representing the Stalking Horse Bidders and/or current shareholders shall not be entitled to compensation.

31. The Debtor shall notify the Successful Bidder whether the Auction Sale is confirmed. The Bankruptcy Court shall determine any disputes concerning the Auction Sale of the Real Property. By participating in the Auction Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes in the Debtor's pending bankruptcy case.

I have read these Terms of Sale and agree to be bound by them.

I hereby offer $_____ for Unit #/Tranche_____, and said offer shall remain irrevocable through the conclusion of the Auction Sale

By: _____     Date: _____

# MEMORANDUM OF SALE – SUCCESSFUL BIDDER

High Bid Realized at Auction: _____
6% Buyer's Premium: _____
**Purchase Price:** _____

The undersigned purchaser has this \_\_th day of March, 2023, agreed to purchase all of Buckingham Tower Condominium, Inc. f/k/a Buckingham Owners, Inc.'s (the "Debtor") right, title and interest in and to the apartments known as _____ located at 615 Warburton Avenue, Yonkers, NY 10701 (collectively, the "Real Property") pursuant to the Terms and Conditions of Sale (the "Terms of Sale"), to which this Memorandum is attached and made a part thereof, from the Debtor in Chapter 11 Case No. 22-22403 (SHL), pending in the United States Bankruptcy Court for the Southern District of New York, and being sold by the Debtor for the highest or best offer as the Debtor in his sole discretion determines, subject to Bankruptcy Court approval, and hereby promises and agrees to comply with the terms and conditions of the Auction Sale for the Real Property, as set forth in the annexed Terms of Sale.

_____    _____
PURCHASER (Signature)                  PURCHASER (Signature)

_____    _____
PRINT NAME OF PURCHASER                PRINT NAME OF PURCHASER

_____    _____
ADDRESS                                ADDRESS

_____    _____
TELEPHONE NUMBER                       TELEPHONE NUMBER

_____    _____
EMAIL                                  EMAIL

Received from _____ the sum of $_____ as a non-refundable deposit for the purchase of the Real Property pursuant to the Terms of Sale, except to the extent as provided in the Terms of Sale.

Buckingham Tower Condominium, Inc.
615 Warburton Avenue
Yonkers, NY 10701

This is to verify that the offer for the above captioned property is for the sum of $_____.

_____
Maltz Auctions

**<u>ATTORNEY INFORMATION</u>**

Name _____

Address _____

_____

Phone _____

**MEMORANDUM OF SALE – SECOND HIGHEST BIDDER**

Bid Realized at Auction: _____
6% Buyer's Premium: _____
**Purchase Price:** _____

The undersigned purchaser has this \_\_th day of March, 2023, agreed to purchase all of Buckingham Tower Condominium, Inc. f/k/a Buckingham Owners, Inc.'s (the "Debtor") right, title and interest in and to the apartments known as _____ located at 615 Warburton Avenue, Yonkers, NY 10701 (collectively, the "Real Property") pursuant to the Terms and Conditions of Sale (the "Terms of Sale"), to which this Memorandum is attached and made a part thereof, from the Debtor in Chapter 11 Case No. 22-22403 (SHL), pending in the United States Bankruptcy Court for the Southern District of New York, and being sold by the Debtor for the highest or best offer as the Debtor in his sole discretion determines, subject to Bankruptcy Court approval, and hereby promises and agrees to comply with the terms and conditions of the Auction Sale for the Real Property, as set forth in the annexed Terms of Sale.

_____   _____
PURCHASER (Signature)               PURCHASER (Signature)


_____   _____
PRINT NAME OF PURCHASER              PRINT NAME OF PURCHASER


_____   _____
ADDRESS                              ADDRESS


_____   _____
TELEPHONE NUMBER                     TELEPHONE NUMBER


_____   _____
EMAIL                                EMAIL

Received from _____ the sum of $100,000.00 as a non-refundable deposit for the purchase of the Real Property pursuant to the Terms of Sale, except to the extent as provided in the Terms of Sale.


Buckingham Tower Condominium, Inc.
615 Warburton Avenue
Yonkers, NY 10701

This is to verify that the offer for the above captioned property is for the sum of $_____.

_____
Maltz Auctions

**<u>ATTORNEY INFORMATION</u>**

Name _____

Address _____

_____

Phone _____