James P. Berg, Esq.
PARKER IBRAHIM & BERG LLP
5 Penn Plaza, Suite 2371
New York, NY 10001
Main: 212.596.7037
Fax: 212.596.7036
james.berg@piblaw.com
*Attorneys for JPMorgan Chase Bank, N.A.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | (Subchapter V) |
| BUCKINGHAM TOWER CONDOMINIUM, INC., | : | |
| f/k/a BUCKINGHAM OWNERS, INC., | : | Case No. 22-22403-shl |
| | : | |
| Debtor. | : | |
| | : | |

**OMNIBUS OBJECTION OF JPMORGAN CHASE BANK, N.A., PNC BANK, N.A., WELLS FARGO BANK, N.A., BANK OF AMERICA, N.A. AND CENLAR FSB TO THE SALE OF DEBTOR'S APARTMENT UNITS LOCATED AT 615 WARBURTON AVENUE, YONKERS, NEW YORK 10701 FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND REQUEST TO VACATE THE ORDER APPROVING BIDDING PROCEDURES RELATED TO THAT SALE AND FOR RELATED RELIEF**

JPMorgan Chase Bank, N.A. ("Chase"), PNC Bank, N.A. ("PNC"), Wells Fargo Bank, N.A. ("Wells Fargo"), Bank of America, N.A. ("BANA") and Cenlar FSB ("Cenlar") hereby submit this omnibus (i) objection to the sale of Debtor's apartment units located at 615 Warburton Avenue, Yonkers, New York, 10701 (the "Building") free and clear of all liens, claims, encumbrances and other interests, and (ii) request to vacate the order approving bidding procedures related to that sale and for related relief, and respectfully state as follows:

I. **INTRODUCTION**

1.  Chase, PNC, Wells Fargo, BANA and Cenlar (together, the "Objecting Lenders"), are the current holders of certain perfected security interests in the shares and proprietary leases

corresponding to certain cooperative units (the "Apartments") located in the Building. Despite their perfected security interests, the Objecting Lenders did not receive any notice of this bankruptcy case or of the proposed sale of the Apartments until after the order approving the bidding procedures became a final order and just days before the sale. Further, there is nothing currently of record indicating how the Debtor intends to address the Objecting Lenders' liens and sums due vis-à-vis the proceeds of the proposed sale of the Apartments, which is a concern that has also been raised by numerous shareholders of the Debtor [Doc. No. 97]. Rather, the Debtor merely states that such issues "would be dealt with under an amended plan." [Doc. No. 96]. To date, however, the Debtor has not filed an amended plan.

2.     Debtor's counsel has represented to certain counsel for the Objecting Lenders that an amended plan will provide that no proceeds of the sale of the Apartments will be distributed directly to certain shareholders whose shares and propriety leases are encumbered by the liens of the Objecting Lenders, and that any such proceeds to which those shareholders may be entitled will instead be distributed to the Objecting Lenders on account of their security interests. Even if that is the case, it is not clear whether the proceeds of the sale will be sufficient to pay the Objecting Lenders in full.

3.     Absent clarity on these issues and the full payoff of each of the Objecting Lenders' secured liens from the sale proceeds, the sale of the Apartments should not be approved.

## II. BACKGROUND

### A. Chase's Interests in the Apartments

4.     Chase is the current holder of certain properly perfected security interests in the shares and proprietary leases associated with Units 1L, 3B and 3E in the Building.

5. As of April 6, 2023, $62,714.21 is owed to Chase in connection with Unit 1L, $60,808.08 is owed to Chase in connection with Unit 3B, and $19,252.99 is owed to Chase in connection with Unit 3E.[1]

6. In addition, the Debtor entered into Recognition Agreements (redacted but otherwise true and correct copies of which are attached hereto as **Exhibit A**) with respect to each of these units. Section 2(c) of each Recognition Agreement provides that the Debtor will notify Chase of any "***notice of intention to terminate the Lease***" which clearly has not occurred. (emphasis added). In addition, Section 2(e) of each Recognition Agreement, the Debtor states that it "shall recognize [Chase's] right as lienor against the Apartment pursuant to the Security, and, ***if the lease be terminated and/or shares cancelled, against the net proceeds of any sale or subletting of the apartment***, after reimbursement to you of all sums due you under the Lease." (emphasis added).

**B.     PNC's Interests in the Apartments**

7. PNC is the current holder of a security interest in the shares and proprietary lease associated with Units 6B and 7C in the Building.

8. As of March 23, 2023, $29,156.68 is owed to PNC in connection with Unit 6B and $29,506.51 is owed to PNC in connection with Unit 7C.[2]

9. In addition, the Debtor entered into Recognition Agreements (redacted but otherwise true and correct copies of which are attached hereto as **Exhibit B**) with respect to Units 6B and 7C. In Section 2(e) of the Recognition Agreement, the Debtor states that it "shall recognize

---

[1] In addition to these amounts, Chase reserves the right to supplement these amounts based on unliquidated fees, advances, charges, and other recoverable items that may be assessed against the accounts subject to its security interests.

[2] In addition to these amounts, PNC reserves the right to supplement these amounts based on unliquidated fees, advances, charges, and other recoverable items that may be assessed against the accounts subject to its security interests.

[PNC's] right as lienor against the Apartment pursuant to the Security, and, ***if the lease be terminated and/or shares cancelled, against the net proceeds of any sale or subletting of the apartment***, after reimbursement to you of all sums due you under the Lease." (emphasis added).

**C.    Wells Fargo's Interests in the Apartments**

10.    Wells Fargo is the current holder of security interests in the shares and proprietary leases associated with Units 4L and 6J in the Building.

11.    As of March 28, 2023, $19,406.02 is owed to Wells Fargo in connection with Unit 6J, and $18,927.37 is owed to Wells Fargo in connection with Unit 4L.[3]

12.    In addition, the Debtor entered into Recognition Agreements (redacted but otherwise true and correct copies of which are attached hereto as **Exhibit C**) with respect to each of these units. In Section 2(e) of each Recognition Agreement, the Debtor states that it "shall recognize [Wells Fargo's] right as lienor against the Apartment pursuant to the Security, and, ***if the lease be terminated and/or shares cancelled, against the net proceeds of any sale or subletting of the apartment***, after reimbursement to you of all sums due you under the Lease." (emphasis added).

**D.    BANA's Interests in the Apartments**

13.    BANA is the current holder of a security interest in the shares and proprietary lease associated with Unit 5L in the Building.

14.    As of April 30, 2023, $100,275.32 of principal and interest is owed to BANA in connection with Unit 5L.[4]

---

[3] In addition to these amounts, Wells Fargo reserves the right to supplement these amounts based on unliquidated fees, advances, charges, and other recoverable items that may be assessed against the accounts subject to its security interests.

[4] In addition to this amount, BANA reserves the right to supplement this amount based on unliquidated fees, advances, charges, and other recoverable items that may be assessed against the account subject to its security interest.

4

15. In addition, the Debtor entered into a Recognition Agreement (a redacted but otherwise true and correct copy of which is attached hereto as **Exhibit D**) with respect to Unit 5L. In Section 2(e) of the Recognition Agreement, the Debtor states that it "shall recognize [BANA's] right as lienor against the Apartment pursuant to the Security, and, *if the lease be terminated and/or shares cancelled, against the net proceeds of any sale or subletting of the apartment*, after reimbursement to you of all sums due you under the Lease." (emphasis added).

E. **Cenlar's Interests in the Apartments**

16. Cenlar is the current holder of a security interest in the shares and proprietary lease associated with Unit 6G in the Building.[5]

17. As of April 5, 2023, $56,024.45 is owed to Cenlar in connection with Unit 6G.[6]

18. In addition, the Debtor entered into a Recognition Agreement (a redacted but otherwise true and correct copy of which is attached hereto as **Exhibit E**) with respect to Unit 6G. In Section 2(e) of the Recognition Agreement, the Debtor states that it "shall recognize [Cenlar's] right as lienor against the Apartment pursuant to the Security, and, *if the lease be terminated and/or shares cancelled, against the net proceeds of any sale or subletting of the apartment*, after reimbursement to you of all sums due you under the Lease." (emphasis added).

F. **The Proposed Sale**

19. On January 21, 2023, the Debtor filed its Motion to Approve Bidding Procedures [Doc. No. 70] (the "Bidding Procedures Motion").

---

[5] While the Bidding Procedures Motion, defined hereinafter, does not seek to sell Unit 4G, Cenlar reserves all of its rights regarding that Unit to the extent the Debtor seeks to take any action with respect to it.
[6] In addition to this amount, Cenlar reserves the right to supplement this amount based on unliquidated fees, advances, charges, and other recoverable items that may be assessed against the account subject to its security interest.

20. The Affidavit of Service [Doc. No. 71] together with the Certificate of Service [Doc No. 72] for the Bidding Procedures Motion do not indicate that the Objecting Lenders were ever served with the Bidding Procedures Motion.

21. On February 10, 2023, the Debtor filed its Notice of Change of Time for Hearing on the Bidding Procedures Motion [Doc. No. 75] (the "Hearing Notice").

22. The Hearing Notice does not indicate that it was ever served on the Objecting Lenders.

23. On March 8, 2023, the Court entered an Order [Doc. No. 90] approving bidding procedures and granting related relief (the "Order")

24. The Affidavit of Service [Doc. No. 91] together with the Certificate of Service [Doc No. 92] for the Order do not indicate that the Order was ever served on the Objecting Lenders.

25. On March 29, 2023, an auction of the 25 cooperative units remaining in the Building was held.

26. Per the Auctioneer's Report of Sale, the combined gross sale proceeds for the 25 units totaled $3,759,960.00. [Doc. No. 98].

27. It is the Debtor's intention that these 25 units be deeded to the respective successful bidders as condominium units, thereby effectuating the conversion of these units from cooperative units to condominiums.

## III. ARGUMENT

### A. Objection to Sale

28. As an initial matter, it is troublesome, to say the least, that the Objecting Lenders received no notice of this bankruptcy case or bar date in the nine months it has been pending, as well as no notice of the proposed sale of the Apartments, until it was brought to the attention of

certain of the Objecting Lenders just days before the sale by a third party. In light of the fact that the Debtor entered into the Recognition Agreements noted above, the Debtor was aware of the Objecting Lenders' interests. Each Recognition Agreement also requires the Debtor to provide the Objecting Lenders with notice of any intention to terminate the propriety leases associated with the Apartments [Section 2(c)], which clearly did not happen here. In addition, the identities of the Objecting Lenders, and their security interests, could have been obtained from a UCC search of the 24 shareholders of the Debtor.

29. Further, Section 363 sales are governed by Fed. R. Bankr. P. 6004, which provides that notice of a proposed sale "shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with §363(b)(2) of the Code." Fed. R. Bankr. P. 6004(a). As the Objecting Lenders are parties in interest, failure to provide Objecting Lenders with 21 days' notice of the sale violates Fed. R. Bankr. P. 2002(a)(2) and (c)(1).

30. Had proper notice been provided to the Objecting Lenders, it may have been possible to address the issues raised herein in advance of the auction. However, at the present time, there is simply not enough information of record regarding the proposed treatment of the Objecting Lenders for the Court to make a determination regarding the propriety of the proposed sale of the Apartments.

31. That being said, if one were to extrapolate from, *inter alia*, the Debtor's initial proposed plan [Doc. No. 56], Bidding Procedures Motion [Doc. No. 70] and March 26, 2023 Response Letter [Doc. No. 96], it appears that the Debtor intends the sale process to proceed in the following manner: (i) the sale of the Apartments would accomplish the conversion of the Apartments from cooperative units to condominiums; (ii) as a result of the conversion, the shares corresponding to each Apartment would be cancelled; (iii) the Debtor will reject the proprietary

leases pursuant to its amended plan; (iv) the Debtor's amended plan will propose that the shareholders receive their respective portion of whatever net sale proceeds remain, *if any*, after payment of all other secured, administrative, priority and general unsecured claims; and (v) the only amounts potentially paid to the Objecting Lenders on account of their security interests in the proprietary leases and shares associated with the Apartments will be such distributions, *if any*, which their respective borrowers/shareholders may be entitled to receive under the amended plan.

32. If this treatment is the Debtor's intention, it is directly contrary to the express language of the Recognition Agreements in which the Debtor recognizes the Objecting Lenders' lien on any proceeds of the sale of the Apartments. Accordingly, the Objecting Lenders are entitled to full payment on account of their properly perfected liens from the sale proceeds, and any order approving the sale should so provide.

**B. Request to Vacate and for Related Relief**

33. More fundamentally, the Objecting Lenders are concerned that the entirety of these events – from proposed bidding procedures through sale – appear to have taken place in violation of the Objecting Lenders' most basic due process rights. This is so because (i) Bankruptcy Rule 9014(b) provides that motions in contested matters shall be served in the manner provided for by Bankruptcy Rule 7004; (ii) Bankruptcy Rule 7004(h) provides that such service shall be accomplished on insured depository institutions, like the Objecting Lenders[7], by certified mail addressed to an officer of the depository institution;[8] and (iii) the Debtor failed to serve the Objecting Lenders with each of the various documents germane to its proposed sale process.

---

[7] With the exception of Cenlar, which is a federally chartered wholesale bank.
[8] The only exceptions that allow for service by first class mail through counsel who has appeared in the case on behalf of the institution, or by court order upon a noticed application or waiver, do not apply in this case.

34. Service of process that does not conform with Rule 7004(h) is ineffective. *See In re Veliz*, 187 B.R. 392, 393 (Bankr. S.D. Fla. 1995). "Absent good service, the Court has no *in personam* or personal jurisdiction over a defendant." *In re Welther*, 343 B.R. 340, 343 (Bankr. S.D. Fla. 2006). "If jurisdiction is taken in a case in which there has been no process or notice, the proceeding is a nullity." *Hicklin v. Edwards*, 226 F.2d 410, 413 (8th Cir. 1955). *See also, e.g., Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987). In this case, because the Debtor, as discussed above, was clearly aware of the Objecting Lenders' interests in the property subject to the Bidding Procedures Motion and Order, and nonetheless failed to serve the Objecting Lenders with those documents, together with the Hearing Notice related thereto, the Court must vacate the Order and invalidate the auction and sale that took place pursuant to the Order.

35. Federal Rule of Civil Procedure 60(b)(4), which applies in bankruptcy matters pursuant to Bankruptcy Rule 9024, authorizes the court to "relieve a party from a final judgment, order, or proceeding . . . if the judgment is void." Fed. R. Civ. P. 60(b)(4); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269-70 (2010). Rule 60(b)(4) applies where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.*, 559 U.S. at 271. This is one of those instances. "[V]oidness usually arises for lack of subject matter jurisdiction or jurisdiction over the parties," *V. T. A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir. 1979), and in this case jurisdiction was lacking over each of the Objecting Lenders. When such events occur, "[t]here is no question of discretion on the part of the court when a motion is under Rule 60(b)(4); if the judgment is void, relief is mandatory." *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C. Cir. 1987). *See also Centr. Vt. PSC v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003) ("if the underlying judgment is

void, it is *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment"); *Hicklin v. Edwards*, 226 F.2d 410, 413 (8th Cir. 1955).

36. Further, Federal Rule of Civil Procedure 60(b)(6) authorizes the court to "relieve a party from a final judgment, order, or proceeding . . . [for] any other reason that justifies relief". Fed. R. Civ. P. 60(b)(6). In this case, given the obvious service errors that took place in connection with the Debtor's proposed bidding procedures and subsequent sale, which errors clearly implicate the Objecting Lenders' due process rights, the Order must be vacated. And, if the Order must be vacated the sale that subsequently took place pursuant to the Order must be invalidated as well. *See* 11 U.S.C. § 105(a) (empowering bankruptcy courts to issue any order that is necessary to carry out the provisions of the Bankruptcy Code).

WHEREFORE, the Objecting Lenders respectfully request that the Court enter an Order:

- Vacating its prior Order approving bidding procedures and granting related relief in this case [Doc. No. 90], and invalidating the Debtor's March 29, 2023 auction and sale of the 25 cooperative units remaining in the Building; or alternatively

- Confirming that the Objecting Lenders' liens attach to the sale proceeds and shall be paid in full from the sale proceeds and setting a deadline for the Objecting Lenders to file proofs of claim; and

- Granting Objecting Lenders such other and further relief as is just, proper and equitable.

[Signature pages follow]

Dated:  April 6, 2023

**PARKER IBRAHIM & BERG LLP**
*Attorneys for JPMorgan Chase Bank, N.A.*

*/s/ James P. Berg*
James P. Berg, Esq.
5 Penn Plaza, Suite 2371
New York, NY 10001
Main: 212.596.7037
Fax: 212.596.7036
james.berg@piblaw.com


**MCGLINCHEY STAFFORD LLP**
*Attorneys for PNC Bank, N.A.*

*/s/ Mikelle V. Bliss*
Mikelle V. Bliss, Esq.
112 West 34th Street, Suite 1515
New York, New York 10120
Tel: 646-362-4058
Email: mbliss@mcglinchey.com


**LOGS Legal Group LLP**
*Attorneys for Wells Fargo Bank, N.A.*

*/s/ Robert W. Griswold*
Robert W. Griswold, Esq.
175 Mile Crossing Boulevard
Rochester, New York 14624
Main: 585.247.9000
Fax: 585.247.7380
rgriswold@logs.com


**DAVIDSON FINK LLP**
*Attorneys for Bank of America, N.A.*

*/s/ Sean P. Williams*
Sean P. Williams, Esq.
400 Meridian Centre Blvd., Suite 200
Rochester, NY 14618
Main: 585.784.4800
Fax: 585.784.8903
spwilliams@davidsonfink.com

**STRADLEY RONON STEVENS & YOUNG, LLP**
*Attorneys for Cenlar FSB*

*/s/ Deborah A. Reperowitz*
Deborah A. Reperowitz, Esq.
100 Park Avenue, Suite 2000
New York, New York 10017
Tel: 212.812.4138
dreperowitz@stradley.com