James P. Berg, Esq.
PARKER IBRAHIM & BERG LLP
5 Penn Plaza, Suite 2371
New York, NY 10001
Main: 212.596.7037
Fax: 212.596.7036
james.berg@piblaw.com
*Attorneys for JPMorgan Chase Bank, N.A.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | (Subchapter V) |
| BUCKINGHAM TOWER CONDOMINIUM, INC., | : | |
| f/k/a BUCKINGHAM OWNERS, INC., | : | Case No. 22-22403-shl |
| | : | |
| Debtor. | : | |
| | : | |

**OMNIBUS OBJECTION OF JPMORGAN CHASE BANK, N.A., PNC BANK, N.A., WELLS FARGO BANK, N.A., AND BANK OF AMERICA, N.A. TO CONFIRMATION OF DEBTOR'S AMENDED PLAN OF LIQUIDATION**

JPMorgan Chase Bank, N.A. ("Chase"), PNC Bank, N.A. ("PNC"), Wells Fargo Bank, N.A. ("Wells Fargo"), and Bank of America, N.A. ("BANA") hereby submit this omnibus objection to confirmation of the Debtor's Amended Chapter 11 Small Business Subchapter V Plan of Liquidation [Doc. No. 115] ("Plan"), and respectfully state as follows:

**I.    BACKGROUND**

  **A.    Auction and Sale of the Apartments**

  1. Chase, PNC, Wells Fargo, and BANA (together, the "Objecting Lenders"), are the current holders of certain perfected security interests in the shares and proprietary leases corresponding to certain cooperative units (the "Apartments") located at 615 Warburton Avenue, Yonkers, New York, 10701 (the "Building").  Despite their perfected security interests, the Objecting Lenders did not receive any notice of this bankruptcy case or of the proposed sale of the

Apartments until after the order approving the bidding procedures became a final order and just days before the Sale.

2. On March 29, 2023, an auction of the 25 cooperative units remaining in the Building was held.

3. Per the Auctioneer's Report of Sale, the combined gross sale proceeds for the 25 units totaled $3,759,960.00. [Doc. No. 98].

4. On April 4, 2023, Objecting Lenders timely filed an Omnibus Objection to the Sale [Doc. No. 106].

5. A hearing on the Sale was held on April 12, 2023 ("Sale Hearing").

6. On May 16, 2023, the Court entered an Order [Doc. No. 120] ("Sale Order") permitting the Sale to occur pursuant to the terms of a confirmed plan. The Sale Order specifically noted that nothing therein "shall in any way limit, restrict or otherwise prejudice any rights that the [Objecting] Lenders may have with respect to the Sale proceeds or with respect to any chapter 11 plan proposed by the Debtor." *See* Sale Order, ¶15.

**B. Objecting Lenders' Interests in the Apartments**

**1. Chase's Interests in the Apartments**

7. Chase is the current holder of certain properly perfected security interests in the shares and proprietary leases associated with Units 1L, 3B and 3E in the Building.

8. As of April 6, 2023, $62,714.21 was owed to Chase in connection with Unit 1L, $60,808.08 in connection with Unit 3B, and $19,252.99 in connection with Unit 3E.[1]

---

[1] In addition to these amounts, Chase reserves the right to supplement these amounts based on unliquidated fees, advances, charges, and other recoverable items that may be assessed against the accounts subject to its security interests.

9. In addition, the Debtor entered into Recognition Agreements (redacted but otherwise true and correct copies of which are attached hereto as **Exhibit A**) with respect to each of these units. Section 2(e) of each Recognition Agreement provides that the Debtor "shall recognize [Chase's] right as lienor against the Apartment pursuant to the Security, and, *if the lease be terminated and/or shares cancelled, against the net proceeds of any sale or subletting of the apartment*, after reimbursement to you of all sums due you under the Lease." (emphasis added).

2. **PNC's Interests in the Apartments**

10. PNC is the current holder of a security interest in the shares and proprietary lease associated with Unit 7C in the Building.

11. As of March 23, 2023, $29,506.51 was owed to PNC in connection with in connection with Unit 7C.[2]

12. In addition, the Debtor entered into a Recognition Agreement (redacted but otherwise true and correct copies of which are attached hereto as **Exhibit B**) with respect to Unit 7C. In Section 2(e) of the Recognition Agreements, the Debtor states that it "shall recognize [PNC's] right as lienor against the Apartment pursuant to the Security, and, *if the lease be terminated and/or shares cancelled, against the net proceeds of any sale or subletting of the apartment*, after reimbursement to you of all sums due you under the Lease." (emphasis added).

3. **Wells Fargo's Interests in the Apartments**

13. Wells Fargo is the current holder of security interests in the shares and proprietary leases associated with Units 4L, 6J, 2EF, 4J and 7D in the Building.

---

[2] In addition to this amount, PNC reserves the right to supplement this amount based on unliquidated fees, advances, charges, and other recoverable items that may be assessed against the accounts subject to its security interest.

14. As of March 28, 2023, $19,406.02 was owed to Wells Fargo in connection with Unit 6J, $18,847.20 in connection with Unit 4L, $77,898.71 in connection with Unit 2EF, $$73,646.57 in connection with Unit 4J, and $17,002.03 in connection with Unit 7D.[3]

15. In addition, the Debtor entered into Recognition Agreements (redacted but otherwise true and correct copies of which are attached hereto as **Exhibit C**) with respect to each of these units. In Section 2(e) of each Recognition Agreement, the Debtor states that it "shall recognize [Wells Fargo's] right as lienor against the Apartment pursuant to the Security, and, ***if the lease be terminated and/or shares cancelled, against the net proceeds of any sale or subletting of the apartment***, after reimbursement to you of all sums due you under the Lease." (emphasis added).

### 4. BANA's Interests in the Apartments

16. BANA is the current holder of a security interest in the shares and proprietary lease associated with Unit 5L in the Building.

17. As of April 30, 2023, $100,275.32 of principal and interest was owed to BANA in connection with Unit 5L.[4]

18. In addition, the Debtor entered into a Recognition Agreement (a redacted but otherwise true and correct copy of which is attached hereto as **Exhibit D**) with respect to Unit 5L. In Section 2(e) of the Recognition Agreement, the Debtor states that it "shall recognize [BANA's] right as lienor against the Apartment pursuant to the Security, and, ***if the lease be terminated***

---

[3] In addition to these amounts, Wells Fargo reserves the right to supplement these amounts based on unliquidated fees, advances, charges, and other recoverable items that may be assessed against the accounts subject to its security interests.

[4] In addition to this amount, BANA reserves the right to supplement this amount based on unliquidated fees, advances, charges, and other recoverable items that may be assessed against the account subject to its security interest.

***and/or shares cancelled, against the net proceeds of any sale or subletting of the apartment***, after reimbursement to you of all sums due you under the Lease." (emphasis added).

    **C.**    **The Plan**

19.    The Debtor filed its Plan on May 11, 2023.

20.    Pursuant to the Plan, the Debtor intends to consummate the Sale, which would convert the units sold (including the Apartments) from cooperative units to condominium units, thereby cancelling the shares corresponding to each unit.

21.    Pursuant to the Plan, the Debtor also intends to reject the proprietary leases associated with the Apartments.

22.    The Plan does not provide a separate classification for treatment of the claims of the Objecting Lenders, and instead provides for treatment to Objecting Lenders in connection with "Class 6 – Interests of the Shareholders." The Plan lists Class 6 as unimpaired and therefore not entitled to vote on the plan.

23.    As currently drafted, the Plan provides that the Shareholders receive their respective portion of whatever net sale proceeds remain, ***if any***, after payment of all other secured, administrative, priority and general unsecured claims. Said distribution would be further diminished by a deduction of any amounts due by the Shareholder to the Debtor such as unpaid maintenance, related charges or real property taxes. As such, the only amounts potentially paid to the Objecting Lenders on account of their security interests in the proprietary leases and shares associated with the Apartments will be such distributions, ***if any***, which their respective borrowers/shareholders may be entitled to receive under the amended plan.

24.    Based on the figures provided in the Plan and available on the claims register, it appears highly doubtful that any funds will be available for distribution to the Shareholders, and

therefore the Objecting Lenders.  Nor has the debtor has provided any estimate as to the funds that it anticipates will be available for distribution to the general unsecured creditor class or the Shareholder class.

25.    Finally, the Debtor proposes to pay Titan Capital ID, LLC ("Titan") more than $3.1 million on account of Titan's purported secured claim against the Building, which would drain the majority of the Sale proceeds from the estate.  This is despite the fact that Titan attached no supporting documentation whatsoever to its Proof of Claim [Claim No. 6], as is required by Fed. R. Bankr. P. 3001.  A true and correct copy of Titan's Proof of Claim is attached hereto as **Exhibit E**.  Debtor's counsel has provided the Objecting Lenders with documentation purportedly provided by Titan to the Debtor to support its claim.  That documentation, which is both unfiled and largely incomplete, has therefore not been subject to any scrutiny in this case – not by any of the Debtor's creditors, shareholders, or the Subchapter V Trustee.  *See In re Ideal Mortg. Bankers, Ltd.*, 539 B.R. 409, 429 (Bankr. E.D.N.Y. 2015) ([C]ourts routinely reclassify a secured claim as a general unsecured claim where no basis exists for secured classification or when a claimant fails to attach documentation evidencing the existence of a security interest to its proof of claim), citing *In re Cruse*, No. 12-8154-RLM-13, 2013 Bankr. LEXIS 360, at * 6-7 (Bankr. S.D. Ind. Jan. 28, 2013) (holding that claimant had an unsecured claim where the proof of claim contained no supporting documentation of a lien, written security interest, or a record of the filing of a financing statement).

III.    **ARGUMENT**

    A.    **Objecting Lenders Are Entitled To Be Paid In Full From the Sale Proceeds**

26.    The Debtor's proposed treatment of the Objecting Lenders is contrary to the treatment required by the Recognition Agreements executed by the Debtor.

27. As noted, the Recognition Agreements requires the Debtor to "recognize [an Objecting Lender's] right as lienor against the Apartment pursuant to the Security, and, ***if the lease be terminated and/or shares cancelled, against the net proceeds of any sale or subletting of the apartment***, after reimbursement to you of all sums due you under the Lease." (emphasis added).

28. Here, the Plan calls (i) for the consummation of the Sale, which will cancel the co-op shares, and (ii) for the rejection of the proprietary leases. Accordingly, the Debtor is bound by the express language of the Recognition Agreements to recognize the Objecting Lenders' lien on any proceeds of the sale of the Apartments.

29. Accordingly, the Objecting Lenders are entitled to full payment on account of their properly perfected liens from the Sale proceeds, and not as last-in-priority contingent distributees as they are currently classified in the Plan.

### B. In the Alternative, Objecting Lenders Are Entitled to Unsecured Claims as a Result of Debtor's Breach of the Recognition Agreements

30. If the amounts due to the Objecting Lenders are not paid in full from the sale proceeds by virtue of the liens thereon provided for by the Recognition Agreements (which they should be), Objecting Lenders would nonetheless be entitled to general unsecured claims against the Debtor by virtue of the Debtor's post-petition breach of the Recognition Agreements, giving rise to damages for breach of contract.

31. For this reason, the Objecting Lenders would suggest that, at a minimum, the claims of Objecting Lenders should be treated in Class 5 for General Unsecured Creditors.

32. A specific timeframe for the Objecting Lenders to file unsecured proofs of claim could be provided for in the Plan or confirmation order.

WHEREFORE, the Objecting Lenders respectfully request that the Court enter an Order:

- Denying confirmation of Debtor's Plan;

- Granting Objecting Lenders such other and further relief as is just, proper and equitable.

Dated: June 2, 2023

**PARKER IBRAHIM & BERG LLP**
*Attorneys for JPMorgan Chase Bank, N.A.*

/s/ James P. Berg
James P. Berg, Esq.
5 Penn Plaza, Suite 2371
New York, NY 10001
Main: 212.596.7037
Fax: 212.596.7036
james.berg@piblaw.com


**MCGLINCHEY STAFFORD LLP**
*Attorneys for PNC Bank, N.A.*

/s/ Mikelle V. Bliss
Mikelle V. Bliss, Esq.
112 West 34th Street, Suite 1515
New York, New York 10120
Tel: 646-362-4058
Email: mbliss@mcglinchey.com


**LOGS Legal Group LLP**
*Attorneys for Wells Fargo Bank, N.A.*

/s/ Robert W. Griswold
Robert W. Griswold, Esq.
175 Mile Crossing Boulevard
Rochester, New York 14624
Main: 585.247.9000
Fax: 585.247.7380
rgriswold@logs.com

- and -

**DAVIDSON FINK LLP**
*Attorneys for Bank of America, N.A.*

*/s/ Sean P. Williams*
Sean P. Williams, Esq.
400 Meridian Centre Blvd., Suite 200
Rochester, NY 14618
Main: 585.784.4800
Fax: 585.784.8903
spwilliams@davidsonfink.com