PENACHIO MALARA, LLP
Counsel for the Debtor
245 Main Street Suite 450
White Plains, NY 10601
(914) 946-2889
Anne Penachio, Esq.

HEARING DATE & TIME:
OCTOBER 19, 2023 at 10:00 AM

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re

    BUCKINGHAM TOWER CONDOMINIUM, INC.
    f/k/a BUCKINGHAM OWNERS, INC.,

                            Reorganized Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

CHAPTER 11

CASE NO.: 22-22403-shl
(Sub-Chapter V)

**THE REPLY OF PENACHIO MALARA LLP TO THE LIMITED OPPOSITION OF TB YONKERS HOLDINGS, LLC TO ITS FINAL APPLICATION FOR COMPENSATION**

TO:    THE HONORABLE SEAN H. LANE
          UNITED STATES BANKRUPTCY JUDGE

         **PENACHIO MALARA LLP** (the "Firm"), counsel to **BUCKINGHAM TOWER CONDOMINIUM, INC. f/k/a BUCKINGHAM OWNERS, INC.**, the reorganized debtor (the "Debtor"), submits this reply to the objection of **TB YONKERS HOLDINGS, LLC** ("TB Yonkers") to its first and final application for compensation and granting such other relief as is appropriate.

## INTRODUCTION

        1.     The limited objection of TB Yonkers should be over-ruled for several separate and independent reasons as set forth in further detail below. Most significantly, it defies common sense. Without the efforts of the Firm, the collateral would have been foreclosed upon and individual homeowners would have likely been displaced. There would be no funds to fight over.

        2.     Through the Firm's work and as a result of its efforts in structuring a sale

1

through the Debtor's Chapter 11 plan, numerous benefits have been conferred upon the Debtor, its estate, the shareholder/tenants and creditors. Notably, shareholders/tenants were afforded the opportunity to purchase their condominium units (the "Units") and also enter into a lease to remain in the units. A Plan Fund was established with approximately $425,000.00.

3. The sales effectuated by the Debtor with counsel's assistance, have yielded approximately $385,000.00 after Titan Capital, the senior secured lender was paid in full. Such funds are held by the Plan Administrator, Heidi Sorvino (who formerly served as Subchapter V Trustee).

4. Significantly, the Firm structured the sales so that the Debtor would not be liable for transfer taxes which would have totaled approximately $71,439.24 (1.5% to Yonkers and .4% to the State of New York).

5. The absence of an objection to the applications of other professionals (the management company, the Subchapter V Trustee, and the Accountant) strongly suggests that the limited objection to the Firm's fees were interposed to "punish" the Firm for exposing irregularities and serious questions regarding the TB Yonkers' claim. Such irregularities, which are set forth below in part, were conveyed to the Subchapter V Trustee and compelled the appointment of a Plan Administrator who anticipates commencing an action against TB Yonkers and/or its affiliates. The Firm will continue to cooperate with the Subchapter V Trustee and U.S. Trustee.

6. As explained below, all fees incurred sought by the Firm should be granted under Section 506 (c) and prevailing case law.

7. Finally, a significant portion of funds (approximately $45,000.00) are not subject to the purported mortgage of TB Yonkers. Such funds, which the Plan Administrator

is holding, were derived from amounts collected in common charges from tenants. There is no assignment of rents provision in the TB Yonkers amended claim.

8. In sum, the fees sought by the Firm should be granted in full. The services performed directly benefited all creditors including TB Yonkers (to the extent that it even holds a claim).

## PERTINENT FACTS

9. The Debtor filed for bankruptcy relief on the eve of foreclosure by mortgage holder Titan Capital ("Titan"). Titan extended a "bridge loan" over 11 years ago when the Debtor, under the control of a "rouge" board member, defaulted on its obligations to its lender (Fannie Mae) and was faced with foreclosure. The Debtor, with the assistance of counsel, confirmed a Chapter 11 plan which was predicated upon the sale of the Units in an orderly manner which was exempt from transfer tax.

## THE PLAN FUND

10. The funds that are currently available in this case (the "Plan Fund") emanate from the funds collected by the management company in rents and from the sale of the individual units. The Plan Administrator is holding approximately $45,000.00 which is not subject to any security interests and approximately $385,000.00 in proceeds of sales which arguably would be encumbered by any lien held by TB Yonkers.

11. The Plan Fund is directly attributable to the efforts and hard work of the Firm. It is submitted that without the efforts of the Firm, there would be no Plan Fund. Titan would have foreclosed. Shareholders would have been stripped of their homes. Instead, through the Plan, Shareholders were given the opportunity to purchase their Units. Those that did not purchase their units were given the opportunity to enter into a "market rate" lease and those who wished to leave

were afforded the opportunity to receive $5,000.00 in "key money". There is a "pot" for distribution to creditors including TB Yonkers should its claim stand.

**TB YONKERS AND ALL CREDITORS BENEFITTED FROM THE FIRM'S SERVICES**

12. Under 11 U.S.C. Section 506 (c), counsel " . . may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property. " 11 U.S.C. Section 506 (c).

13. It is well settled that counsel for a debtor may be paid for the costs associated with a sale of property subject to security interests. *Willard v. Preuss (In re Willard),* 21 Civ. 10220 (NSR) (S.D.N.Y. Mar. 22, 2023). The entity seeking to recover costs under 11 U.S.C. § 506(c) bears the burden of proving that the exception is applicable. To recover expenses under 11 U.S.C. § 506(c), the applicant must prove that the expenses were 1) reasonable, 2) necessary, and 3) beneficial to the secured creditor. *See eg. In re Kotter*, 59 B.R. 266, 269 (Bankr.C.D.Ill. 1986); *In re Loop Hospital Partnership*, 50 B.R. 565, 571 (Bankr.N.D.Ill. 1985). A determination of whether the costs and expenses meet the requirements of 11 U.S.C. § 506(c) will depend upon the particular facts of each case. 3 Collier on Bankruptcy, ¶ 506.06 at 506-54. (15th ed. 1988).

14. Here, it is clear that the compensation sought by the Firm meets the criteria for allowance under 11 U.S.C. § 506(c). First, they are reasonable and necessary. Counsel exercised billing judgment throughout the case. Indeed, the case was administered efficiently and in a manner designed to conserve expenses and avail the Debtor of the benefits of a plan (including the appointment of a Plan Administrator and transfer tax savings). Counsel did not bill for fees for services that did not directly advance the case. The time expended was absolutely needed to sell the units and prevent Titan from foreclosing.

15. The services performed by the Firm benefited creditors and resulted in the Plan

Fund. Through the Firm's expertise, the Debtor saved over $70,000.00 in transfer taxes because the sales were effectuated under a plan. The Firm assisted the Subchapter V Trustee in negotiating a "discount" from Titan of about $100,000.00. The Firm attended and consummated closings of 24 apartment units. It is submitted these accomplishments alone more than justify the fee sought.

16. TB Yonkers' reliance on the *Flagstaff Foodservice Corp., 762 F.2d 10 (2d Cir. 1984)* and *Codesco, Inc.*, 18 B.R. 225, 230 (Banr. S.D.N.Y. 1982) is misplaced. These cases, which are nearly 40 years old, have been effectively over-ruled by *In re Anderson.* 66 B.R. 97 (B.A.P. 9th Cir. 1986) and other cases including *Willard v. Preuss (In re Willard),* 21 Civ. 10220 (NSR) (S.D.N.Y. Mar. 22, 2023) decided by Judge Roman and *In re Croton River Club, Inc.,* 162 B.R. 656, 663 (Bankr. S.D.N.Y. 1993).

17. Finally, should the Court be inclined to consider the Limited Objection, it could award fees to the Firm from the "unencumbered" funds of about $45,000.00 and the balance sought (about $65,000.00) from the sale of the units. This would effectively only "eat into" any collateral of TB Yonkers by less than the transfer tax savings.

## TB YONKERS CLAIM

19. A review of the Limited Objection of TB Yonkers would not be complete without a review of its claim. Upon information and belief, TB Yonkers' principal, Jason Harkavy ("Harkavy") was involved in the Debtor's governance as a shareholder at that time. Harkavy was the sponsor of the Debtor's conversion from coop to condominium.

20. Harkavy enjoys a close relationship with Board Chair, Jose Guerrero ("Guerrero"). The relationship is so close, that Harkavy, through another company, Aria Capital, financed the purchase of Guerrero's apartment unit in the context of

this bankruptcy so that Guerrero could continue to reside there and ultimately re-claim ownership.

21. TB Yonkers' claim is questionable for multiple reasons. Most significantly, it was not supported by a board resolution with the requisite number of votes which is mandated by the By Laws. It also includes claims for monies allegedly advanced by Harkavy upon which the statute of limitations had already run. In this regard, it appears that the Note filed with the claim is false – consideration supporting it were time barred. The Note, at best, is based upon unsubstantiated and time barred advances made while Harkavy was in control of the Debtor and acting as Condo Plan sponsor. Moreover, Harkavy is an 'insider" and as such, any claim may well be subordinated.

22. Significantly, at his deposition under oath, Guerrero could not describe the claim, what is represented, and whether it had any merit.

23. Guerrero, who enjoys a close relationship with Harkavy (Harkavy financed the purchase of his condo unit through Aria), would not authorize the Firm to object to the TB Yonkers Claim even though it was objectionable on its face. As such, the appointment of the Plan Administrator was necessitated.

24. Harkavy initially agreed to be treated as a wholly unsecured creditor (obviously aware of the issues with his claim). TB Yonkers filed its claim late as an unsecured claim. Thereafter, the claim was amended and classified as secured. Based upon the "secured" classification, TB Yonkers sought to gain an advantage in the bidding process by seeking to "credit bid." Such application was opposed by the Subchapter V Trustee and denied by the Court.

25. Harkavy, obviously angered that the Firm could not support TB Yonkers' claim, subjected the undersigned to threats of "sanctions" in at least one email.

26. The fact that TB Yonkers did not object to any other professional fees supports the Firm's position that the objection is retaliatory, based upon the Firm complying with its fiduciary duty to all creditors and conveying the issues with the claim to the Subchapter V Trustee and Office of the US Trustee.

**WHEREFORE,** the Debtor respectfully requests that the Court over-rule the objections, and grant such other and further relief as may be just and proper.

Dated: White Plains, New York
October 17, 2023

PENACHIO MALARA, LLP

/s/ Anne J. Penachio
Anne J. Penachio
Counsel for the Debtor
245 Main Street - Suite 450
White Plains, New York 10601
T: (914) 946-2889